Filed 9/19/14  Allen v. City of Burbank CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| PETE ALLEN,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CITY OF BURBANK,<br><br>    Defendant and Appellant. | B249797<br><br>(Los Angeles County<br>Super. Ct. No. EC059929) |

APPEAL from an order of the Superior Court of Los Angeles County, Donna Fields Goldstein, Judge.  Reversed with directions.

Amelia Ann Albano, Burbank City Attorney and Carol A. Humiston, Senior Assistant City Attorney, for Defendant and Appellant.

The Claypool Law Firm, Brian E. Claypool; Gustafson & Goostrey and James D. Gustafson for Plaintiff and Respondent.

# I. INTRODUCTION

Defendant, City of Burbank, appeals from a May 8, 2013 order denying its special motion to strike the complaint of plaintiff, Pete Allen, under Code of Civil Procedure[1] section 425.16. Defendant argues: plaintiff's causes of action for violations of Government Code section 8547.1 and Labor Code section 1102.5, subdivision (b) arise from its exercise of free speech or petitioning rights under section 425.16, subdivision (e); it presented undisputed evidence showing plaintiff was terminated because he lied during an internal affairs investigation, which is an official proceeding authorized by law; a termination arising from an internal affairs investigation is part of an official proceeding; and plaintiff did not meet his burden of establishing a probability that he will prevail on the merits of his claims. We conclude the challenged conduct is enumerated in section 425.16, subdivision (e). In addition, plaintiff has not shown a probability of prevailing on the merits. Thus, the order denying the special motion to strike must be reversed. Upon remittitur issuance, defendant may recover its attorney fees and costs incurred in the trial court and on appeal in connection with its special motion to strike.

# II. BACKGROUND

## A. Complaint

Plaintiff filed a complaint against defendant on December 13, 2012. The complaint alleges plaintiff was employed by defendant as a police officer. On December 28, 2007, an armed robbery occurred at Porto's Bakery in Burbank. The next day, plaintiff was designated as the case agent, responsible for managing the robbery investigation. Sergeant Edward Penaranda supervised plaintiff and on call Officer Angelo Dahlia. Lieutenant John Murphy oversaw the entire robbery investigation.

---

[1] Further statutory references are to the Code of Civil Procedure unless otherwise indicated.

On December 29, 2007, Officer Dahlia spoke to plaintiff. Officer Dahlia witnessed Lieutenant Omar Rodriguez threaten a robbery suspect. According to the complaint: "[Officer Dahlia] later told [plaintiff] that he had seen [Lieutenant Rodriguez] standing directly in front of a seated suspect. [Lieutenant Rodriguez] then extended his left arm and used his left hand to grasp the suspect's throat. [Lieutenant Rodriguez] then retrieved his handgun from his holster with his right hand, placed the barrel of the gun directly under the suspect's eye and said, 'How does it feel to have a gun in your face motherfucker[.]'" Lieutenant Rodriguez then looked up and saw Officer Dahlia. Lieutenant Rodriguez then lowered his gun. Later, Lieutenant Murphy told plaintiff to leave the robbery investigation to the narcotics and special enforcement detail because most of the suspects were Spanish speakers. Other investigators took over the robbery investigation and plaintiff and Officer Dahlia were excluded from participating in interviews with the robbery suspects. Following December 29, 2008, witnesses and suspects allegedly were physically assaulted and beaten in Burbank Police Department interview rooms. Sergeants Neil Gunn and Duran and some patrol officers guarded the doors of the interview and audio rooms. During this time, plaintiff observed several suspects with facial injuries following their arrest.

On December 30, 2007, Officer Dahlia told Detective Ken Schiffner about the Rodriguez incident. On January 3, 2008, Officer Dahlia spoke to Lieutenant Murphy. Officer Dahlia said he had heard a suspect being beaten in the interview room. Officer Dahlia reported other instances of unlawful tactics and procedures being used by Burbank police officers. Lieutenant Murphy ignored the complaints and allegedly told Officer Dahlia to "'stop his sniveling[.]'" On January 3 or 4, 2008, Detective Schiffner informed plaintiff what Officer Dahlia had said about the Rodriguez incident. Twice in January 2008, Officer Dahlia met with Lieutenant Murphy. Officer Dahlia pled with Lieutenant Murphy to stop the unlawful tactics and beatings. Lieutenant Murphy disregarded Officer Dahlia's statements. On February 22, 2008, plaintiff and Officer Dahlia heard loud bangs on the office walls. They ran down the hall to the interview room and found Sergeant Gunn had a robbery suspect in the room. In March 2008, plaintiff spoke with

3

Lieutenant Murphy about the unlawful tactics being used by some of the officers investigating the Porto's Bakery robbery. Lieutenant Murphy allegedly told plaintiff to "'shut his mouth[.]'"

In April 2008, the Burbank Police Department conducted an internal investigation concerning how the Porto's Bakery robbery investigation was handled. Plaintiff was notified he would be interviewed. Plaintiff wanted to know whether Officer Dahlia was going to be interviewed as part of the internal affairs investigation. Plaintiff spoke with Officer Dahlia. Officer Dahlia said he was going to be interviewed as part of the internal affairs investigation. Officer Dahlia told plaintiff he was nervous because he had received threats against him and his family. The sources of the threats were Lieutenant Rodriguez and Sergeants Penaranda and Duran. They told Officer Dahlia not to disclose the Rodriguez incident. The complaint alleges, "[Plaintiff] also feared that [Officer Dahlia] and/or [Officer Dahlia's] family members would be physically harmed or killed if [plaintiff] disclosed the [Rodriguez] incident. [Plaintiff] was also worried for his own safety because he was aware of all the threats and intimidation [Officer Dahlia] was receiving from [Lieutenant Rodriguez] and others in the [department] warning [Officer Dahlia] not to disclose the [Rodriguez] incident."

In May 2009, a second internal investigation was conducted by the Los Angeles County Sheriff's Department but spearheaded by Lieutenant Murphy. The complaint does not identify who interviewed plaintiff but generically refers to the interviewers as the sheriff's department. On May 18, 2009, plaintiff was first interviewed by sheriff's department investigators. He told the sheriff's department investigators what he knew. On July 15, 2009, plaintiff had his second interview with sheriff's department investigators. Plaintiff was advised he was being interviewed only as a witness in the case. Plaintiff then returned to the police station. Upon returning to the police station, plaintiff learned Sergeant Penaranda had been placed on administrative leave. A supervisor, identified only as Lieutenant Dermenjian, stated Lieutenant Duran had spread a rumor that plaintiff was to blame for Sergeant Penaranda being placed on administrative leave.

In August and September 2009, plaintiff had two interviews with Jim Gardiner and Captain Craig Varner. Plaintiff was told he was the focus of the investigation for the first time during the interview. Plaintiff provided more details regarding Officer Dahlia and the Rodriguez incident.

In the months following plaintiff's interviews with Mr. Gardiner and Captain Varner, Chief Tim Stehr and Lieutenant Murphy retired. Lieutenant Rodriguez, Sergeant Penaranda, Officer Dahlia and other police officers were placed on administrative leave and later terminated. On March 29, 2010, plaintiff was placed on administrative leave and given a proposed notice of termination.

On June 16, 2010, plaintiff was terminated for alleged violations of the Burbank Police Department's memorandum of understanding. Plaintiff commenced administrative proceedings challenging his termination. As of the filing of the complaint, plaintiff's administrative appeal was still pending.

The complaint alleges defendant violated Government Code section 8547.1. The complaint alleges plaintiff was a state employee. Plaintiff reported abuse of authority and violations of law occurring at the Burbank Police Department to the sheriff's department and the Federal Bureau of Investigation on two separate occasions. Before plaintiff completed participation in the investigations by the sheriff's department and the Federal Bureau of Investigation, he was named Burbank Detective of the Year in 2009. After plaintiff participated in these two investigations, he was placed on administrative leave and then terminated. Before being placed on administrative leave, plaintiff had never been disciplined or reprimanded for his job performance. The complaint also alleges: defendant violated Labor Code section 1102.5, subdivision (b) by retaliating against plaintiff for disclosing information to law enforcement; plaintiff engaged in protected activity by telling the sheriff's department and the Federal Bureau of Investigation about police misconduct; and as a result of plaintiff's cooperation with the investigations by the sheriff's department and the Federal Bureau of Investigation, he was subjected to adverse employment actions.

5

B.  Defendant's Special Motion To Strike

On March 12, 2013, defendant filed a section 425.16 special motion to strike. Defendant argued plaintiff's causes of action arose from defendant's internal affairs investigation.  Defendant contended the internal affairs investigation fell within section 426.16, subdivision (e).  Defendant also argued plaintiff could not establish a probability of prevailing on the merits.  Defendant asserted plaintiff could not bring a Government Code section 8547.1 claim because he was not a state employee.  In addition, defendant argued plaintiff failed to establish a prima facie case of retaliation for his Labor Code section 1102.5, subdivision (b) claim.  Defendant contended plaintiff was terminated because he lied during an internal affairs investigation.  Defendant also asserted:  it was immune from liability under Government Code sections 815.2, subdivision (b), 820.2 and 821.6; its conduct was privileged under Civil Code section 47; and plaintiff failed to file a timely claim under Government Code section 945.4.

Defendant filed declarations from Retired Chief Stehr, James Gardiner, and Burbank Police Department Chief Scott LaChasse in support of its special motion to strike.  As will be noted, plaintiff filed no declarations nor presented any other evidence. Chief Stehr was the Burbank police chief from August 1, 2007, until his retirement on December 31, 2009.  On April 26, 2008, Chief Stehr learned Detective Kerry Schilf had reported a rumor about police misconduct to Lieutenant Puglisi.  Lieutenant Puglisi was assigned to the department's internal affairs bureau.  The rumor was that Lieutenant Rodriguez had put a gun to a suspect's head in order to elicit information.  The suspect was later determined to be uninvolved in the Porto's Bakery robbery.  Lieutenant Rodriguez's conduct was witnessed by an unnamed Burbank police officer.  On the same day, Chief Stehr ordered an internal affairs investigation into the allegations of misconduct by Lieutenant Rodriguez.

During the internal affairs investigation conducted by Lieutenant Puglisi and Sergeant Gerry Misquez, several Burbank police officers were interviewed, including Officer Dahlia and plaintiff.  During an April 28, 2008 interview, plaintiff denied being

6

aware of any misconduct by Lieutenant Rodriguez. The first internal affairs investigation was closed because there was no witness to corroborate the suspect's reports that he was a victim of excessive force.

On April 6, 2009, Chief Stehr had a meeting with Detective Mike Parrinello, president of the Burbank Police Detectives' Association. Also present was Sergeant Travis Irving, the sergeant representative on the association's directors' board. Detective Parrinello discussed a meeting with Officer Dahlia on April 3, 2008. Chief Stehr declared, "Detective Parrinello informed me that he had met with [Officer] Dahlia . . . and [Officer] Dahlia had expressed that he was feeling threatened by Lieutenant Rodriguez." Detective Parrinello suggested Chief Stehr reopen the internal affairs investigation of the Porto's Bakery robbery misconduct allegation. Detective Parrinello stated an officer had witnessed misconduct but did not report it. On the same day, Chief Stehr instructed Captain Varner and Sergeant Misquez to reopen the internal affairs investigation.

On April 16, 2009, Chief Stehr wrote a letter to then-Sheriff Leroy Baca requesting the sheriff's department conduct an investigation into the allegations concerning Lieutenant Rodriguez. Chief Stehr instructed Captain Varner and Sergeant Misquez to cooperate with the sheriff's department's criminal investigation. After consultations with the Burbank City Attorney's Office and the Burbank City Manager, Mike Flad, Chief Stehr retained Mr. Gardiner to reopen the internal affairs investigation. Chief Stehr retired before Mr. Gardiner completed the investigation.

Chief Stehr denied retaliating against plaintiff for communicating with the sheriff's department or any other law enforcement agency regarding misconduct in the Burbank Police Department. The Burbank Police Department made its conference rooms available for the sheriff's department to interview Burbank police officers and detectives. Plaintiff was paid his salary by defendant while being investigated by the sheriff's department. At the time of his retirement, Chief Stehr was aware of a federal investigation of one or more officers of the Burbank Police Department. But Chief Stehr did not know if plaintiff cooperated with the Federal Bureau of Investigation.

7

In his declaration, Mr. Gardiner stated he was the former police chief for the City of San Luis Obispo from 1987 through 2002. On April 17, 2009, he was retained by defendant to conduct an internal affairs inquiry concerning alleged use of force by Burbank police officers and detectives during the Porto's Bakery robbery investigation. Mr. Gardiner reviewed the first internal affairs investigation concerning the rumor that Lieutenant Rodriguez had held a gun to a suspect's head. The suspect confirmed the rumor during the first investigation. But after a two-month investigation, the allegation against Lieutenant Rodriguez was deemed not sustained. The basis for this determination was that no police officer or independent witness corroborated the suspect's statements.

During the second internal affairs investigation, Mr. Gardiner interviewed Burbank police officers and witnesses including plaintiff. Mr. Gardiner interviewed plaintiff on August 4 and September 28, 2009. Mr. Gardiner summarize the results of the interviews of plaintiff: "During my interviews with [plaintiff], he expressly admitted he was aware of information about the misconduct of [Lieutenant] Rodriguez shortly after it had occurred and that Officer . . . Dahlia had witnessed the misconduct. [Plaintiff] admitted to me he was aware of the information about the misconduct of [Lieutenant] Rodriguez at the time he was interviewed during the original [i]nternal [a]ffairs investigation. . . . [Plaintiff] admitted to me he had not responded truthfully to [Lieutenant] Puglisi's questions during the original [i]nternal [a]ffairs investigation. . . . According to [plaintiff], because Officer . . . Dahlia had reported to [plaintiff] concerns about Officer . . . Dahlia's personal safety at the hands of [Lieutenant] Rodriguez and [Sergeant Penaranda], and it was clear to [plaintiff] that Officer . . . Dahlia was not going to tell what he saw during the original [i]nternal [a]ffairs investigation, [plaintiff] did not want to be only one reporting misconduct." Transcripts of Mr. Gardiner's April 28 and August 4, 2009 interviews of plaintiff were attached to the special motion to strike. During the August 4, 2009 interview, plaintiff admitted: "'It was Ken Schiffner told me that -- that there were rumors flying around about things, and -- and he said -- I -- I -- I can't tell you how it came up, but it came up

8

in -- in this whole thing. [¶] And he said, 'Yeah,' you know, [Officer Dahlia] saw [Lieutenant Rodriguez] stick a gun in this guy's face.'"

At the completion of the second internal affairs investigation, Mr. Gardiner sustained multiple misconduct allegations against plaintiff. Mr. Gardiner concluded plaintiff intentionally withheld evidence that affected the outcome of the first internal affairs investigation. Mr. Gardiner sustained allegations against plaintiff for violations of the Burbank Police Department's memorandum of understanding and duty manual. These violations included: neglect of duty; failure to report misconduct; lying; violation of administrative rules and regulations; conduct of a disgraceful or scandalous nature; conduct unbecoming a public officer or employee; willfully making any false statements; and incompetency or inefficiency in the performance of required duties. Mr. Gardiner denied retaliating against plaintiff for communicating with the sheriff's department or any other law enforcement agency concerning misconduct in the Burbank Police Department.

In his declaration, Chief LaChasse stated he became police chief of Burbank on January 7, 2010. When he joined the Burbank Police Department, Mr. Gardiner's internal affairs investigation was already underway. In addition, Lieutenant Rodriguez, Sergeants Gunn and Penaranda and Officer Dahlia were on administrative leave. Mr. Gardiner finished his internal affairs investigation in March 2010. Chief LaChasse then reviewed Mr. Gardiner's final report. Based on the final report and the supporting evidence, Chief LaChasse decided to terminate plaintiff and other Burbank sworn personnel. Chief LaChasse concluded plaintiff was dishonest when communicating during the first internal affairs investigation and failed to report police misconduct.

Chief LaChasse knew former Chief Stehr had referred the issue of police misconduct to the sheriff's department. Chief LaChasse and his staff cooperated and assisted with the sheriff's department's investigation. Chief LaChasse made the Burbank Police Department's and City of Burbank's facilities available for the sheriff's investigators to conduct interviews. Chief LaChasse denied terminating plaintiff because of any cooperation in the sheriff's investigation. Chief LaChasse encouraged all Burbank

9

Police Department sworn and unsworn personnel to participate and cooperate in the sheriff's department's investigation.

Chief LaChasse knew the Federal Bureau of Investigation was conducting an investigation of police misconduct when he joined the Burbank Police Department. The Burbank Police Department fully cooperated with the Federal Bureau of Investigation. Chief LaChasse encouraged police officers to cooperate with the Federal Bureau of Investigation. Chief LaChasse concluded: "I did not terminate the employment of [plaintiff] because he participated in the [Federal Bureau of Investigation] investigation of Burbank police officer misconduct. I did not know at the time I terminated [plaintiff] whether or not he was interviewed by or cooperated with the [Federal Bureau of Investigation] in its investigation, and to this date, I still have no knowledge one way or the other. [¶] I terminated [plaintiff's] employment because he did not truthfully report his knowledge regarding police misconduct when expressly asked during an [i]nternal [a]ffairs investigation."

Defendant also submitted excerpts from plaintiff's administrative appeal hearing. At the August 15, 2012 hearing, plaintiff admitted he had a duty to report misconduct without regard for personal safety concerns, personal feelings or friendships. Plaintiff acknowledged he was required to tell the truth during an internal affairs interview. Plaintiff admitted he omitted information and thus provided false responses when asked if he knew of misconduct associated with the Porto's Bakery robbery investigation. He acknowledged there was no legitimate reason for him to lie during the first internal affairs investigation. At the August 16, 2012 hearing, plaintiff admitted lying and failure to report misconduct warranted termination.

Plaintiff filed his opposition to the special motion to strike on March 22, 2013. Plaintiff conceded the internal affairs investigation was an official proceeding authorized by law. But plaintiff argued he was not objecting to any statements or writings made during the course of the internal affairs investigation. Rather, plaintiff objected to being terminated following the completion of the internal affairs investigation after he disclosed police misconduct. Plaintiff also argued: he met his burden of establishing a probability

10

of prevailing on the merits; as a police officer he was a state employee; he was terminated because he was a whistleblower; defendant was not immune from liability under Government Code sections 815.2, 820.2, and 821.6; defendant's conduct was not privileged under Civil Code section 47; and he filed a timely government claim that was denied by defendant. As noted, plaintiff submitted no declarations or other evidence to support his opposition to defendant's motion.

## C. Trial Court Ruling

The hearing on the special motion to strike was held on April 3 and May 8, 2013. At the hearing, defense counsel asked the trial court whether it had read defendant's declarations and exhibits. The trial court responded, "Well, I can't go outside the complaint." The trial court stated the complaint was not subject to a special motion to strike because the principal thrust of plaintiff's allegations was that his termination was wrongful.

On May 8, 2013, the trial court denied defendant's special motion to strike. The trial court ruled communications made during an internal affairs investigation are "protected acts" under section 425.16. However, the trial court ruled plaintiff's complaint did not seek redress for an oral or written statement in furtherance of free speech or a protected act. As to the first cause of action, the trial court ruled the claim was based on defendant's act of terminating plaintiff's employment because he was a whistleblower. The trial court found the second cause of action sought relief from defendant's act of terminating plaintiff in retaliation for disclosing information to the sheriff's department and the Federal Bureau of Investigation. For both claims, the trial court ruled: "The [p]laintiff's claim is not that he was terminated as a result of an internal affairs investigation; instead, the [p]laintiff's [c]laim is that he was terminated because he disclosed information to the [sheriff's department] and the [Federal Bureau of Investigation] regarding the violations of law that occurred during the [d]efendant's investigation of the Porto[']s robbery." The trial court ruled defendant did not meet its

11

initial burden of demonstrating that defendant's acts fit into the categories identified in section 425.16, subdivision (e). Because defendant had not met its burden of demonstrating that section 425.16 applied to plaintiff's claims, plaintiff had no burden of showing a probability of prevailing on the merits. Defendant filed a notice of appeal on June 26, 2013.

## III. DISCUSSION

### A. Special Motion To Strike Under Section 425.16

Section 425.16, subdivision (b)(1) states: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." The court must engage in a two-step process when determining a special motion to strike. First, the moving party must make a threshold prima facie showing that the challenged cause of action is one "arising from" the moving party's actions in furtherance of the right of petition or free speech. (*Episcopal Church Cases* (2009) 45 Cal.4th 467, 477; *Flatley v. Mauro* (2006) 39 Cal.4th 299, 314; *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 (*Equilon*).) Second, if the court finds such a showing has been made, the burden shifts to plaintiff to establish a probability of prevailing on the merits. (*Episcopal Church Cases, supra*, 45 Cal.4th at p. 477; *Flatley v. Mauro,* 39 Cal.4th at p. 314; *Equilon, supra*, 29 Cal.4th at p. 67.)

We review de novo the trial court's ruling on a special motion to strike. (*Flatley v. Mauro, supra,* 39 Cal.4th at pp. 325-326; *Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.) In determining the special motion to strike, "[t]he court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2); *Flatley v. Mauro, supra,*

39 Cal.4th at p. 326; *Soukup v. Law Offices of Herbert Hafif, supra,* 39 Cal.4th at p. 269, fn. 3.)  But as explained by our Supreme Court, we do not weigh the competing evidence: "'[W]e neither "weigh credibility [nor] compare the weight of the evidence.  Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by plaintiff as a matter of law." [Citation.]'" (*Flatley v. Mauro, supra,* 39 Cal.4th at p. 326; *Soukup v. Law Offices of Herbert Hafif, supra,* 39 Cal.4th p. 269, fn. 3; accord, *Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821.)

B.  "Arising From" Any Act In Furtherance Of Right To Petition Or Free Speech

The first prong analysis depends upon conduct enumerated in section 425.16, subdivision (e).  Section 425.16, subdivision (e) states:  "As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes:  (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (*Kurz v. Syrus Systems, LLC* (2013) 221 Cal.App.4th 748, 758; *Birkner v. Lam* (2007) 156 Cal.App.4th 275, 283.)  Discussing the first prong, our Supreme Court explained:  "[T]he statutory phrase, 'cause of action . . . arising from' means simply that the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech. [Citation.]  . . . . [T]he critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of

13

petition or free speech. [Citations.] 'A defendant meets this burden by demonstrating that the act underlying the plaintiff's cause fits one of the categories spelled out in section 425.16, subdivision (e) . . . .'" (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78; see *Old Republic Construction Program Group v. Boccardo Law Firm, Inc.* (2014) 227 Cal.App.4th 554, 564.)

In determining whether a cause of action arises from any act in furtherance of the right of petition or free speech, we look at "'the gravamen or principle thrust'" of the action. (*Episcopal Church Cases, supra,* 45 Cal.4th at p. 477; *Hawran v. Hixson* (2012) 209 Cal.App.4th 256, 269.) Our Supreme Court has stated: "The anti-SLAPP statute's definitional focus is not on the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability – and whether that activity constitutes protected speech or petitioning." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 92; accord, *Episcopal Church Cases, supra,* 45 Cal.4th at p. 477.) There is no requirement that defendant prove the suit was intended to chill its speech or actually had that affect. Our Supreme Court explained: "[W]e held that the plain language of the 'arising from' prong encompasses any action based on protected speech or petitioning activity as defined in the statute (*Navellier v. Sletten*[, *supra,*] 29 Cal.4th [at pp.] 89-95), rejecting proposals that we judicially engraft the statute with requirements that defendants moving thereunder also prove the suit was intended to chill their speech (*Equilon, supra,* 29 Cal.4th p. 58) or actually had that effect. (*City of Cotati v. Cashman*[, *supra,*] 29 Cal.4th [at p.] 75.)" (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 734.)

Defendant argues it met its burden of establishing that its decision to terminate plaintiff was an act in furtherance of protected speech or petitioning activity. We agree. An internal investigation is an official proceeding authorized by law. (*Hansen v. Department of Corrections & Rehabilitation* (2008) 171 Cal.App.4th 1537, 1544, citing *Green v. Cortez* (1984) 151 Cal.App.3d 1068, 1073.) Statements and writing made during an internal investigation fall under section 425.16, subdivision (e)(1). (*Hansen v. Department of Corrections & Rehabilitation, supra,* 171 Cal.App.4th at p. 1544; *Tichinin*

14

*v. City of Morgan Hill* (2009) 177 Cal.App.4th 1049, 1061 [investigative reports by surveillance subcommittee, the ensuing hearing, and subsequent resolution adopted by the city council condemning plaintiff are enumerated in § 425.16, subds. (e)(1)-(2)]; *Miller v. City of Los Angeles* (2008) 169 Cal.App.4th 1373, 1383 [defamation and intentional infliction of emotional distress claims based on city's investigation of plaintiff's conduct and the ensuing determination of misconduct arose from enumerated activity].)

Plaintiff argues the violations of Government Code section 8547.1 and Labor Code section 1102.5, subdivision (b) arise from the termination. Plaintiff's complaint alleges he was terminated for reporting police misconduct to the sheriff's department and the Federal Bureau of Investigation. But defendant presented undisputed evidence that former Chief Stehr asked the sheriff's department to conduct an investigation on April 16, 2009. Chief Stehr instructed Captain Varner and Sergeant Misquez to cooperate with the sheriff's department's investigation. The Burbank Police Department made its conference rooms available to deputies interrogating Burbank police officers. Plaintiff was paid his salary by defendant to be interviewed by the sheriff's department. Chief LaChasse also encouraged all Burbank Police Department officers to cooperate with the investigations conducted by the sheriff's department and the Federal Bureau of Investigation. Neither Chiefs Stehr nor LaChasse knew whether plaintiff had cooperated in the inquiry by the Federal Bureau of Investigation. At the end of the August 4, 2009 interview, plaintiff stated the Federal Bureau of Investigation had not contacted him.

The complaint acknowledges plaintiff's termination was based on alleged violations of the police department's memorandum of understanding. Plaintiff challenges defendant's stated reason for firing him by alleging he was terminated in retaliation for being a whistleblower. But defendant submitted uncontroverted evidence that plaintiff was terminated for lying in the first internal affairs investigation. During the second internal affairs investigation, plaintiff was interviewed by Mr. Gardiner. In that interview, plaintiff admitted lying to Lieutenant Puglisi during the first internal affairs investigation. At the completion of the second internal affairs investigation,

15

Mr. Gardiner sustained allegations against plaintiff for violations of the Burbank Police Department's memorandum of understanding and duty manual.  Chief LaChasse made the termination decision after concluding plaintiff was dishonest during the first internal affairs investigation and had failed to report police misconduct.  At his administrative appeal hearing, plaintiff agreed he had a duty to report misconduct without regard for personal safety concerns, personal feelings or friendships.  Plaintiff admitted providing false responses to Lieutenant Puglisi about misconduct associated with the Porto's Bakery robbery investigation.  He agreed there was no legitimate reason for him to lie during the internal affairs investigation.  Plaintiff also acknowledged lying and failure to report misconduct warranted termination.

The undisputed evidence shows defendant decided to terminate plaintiff's employment following an internal affairs investigation.  Defendant's investigation and termination decision are within the enumerated conduct in section 425.16, subdivision (e)(1).  (See *Gallanis-Politis v. Medina* (2007) 152 Cal.App.4th 600, 610-612 [retaliation claim arose from investigation, report and denial of plaintiff's request for bilingual pay, which are enumerated activities]; *Vergos v. McNeal* (2007) 146 Cal.App.4th 1387, 1397-1399 [hearing officer's denial of plaintiff's grievances including communication of adverse results is enumerated conduct under § 425.16, subd. (e)(2)]; see also *Nesson v. Northern Inyo County Local Hospital Dist.* (2012) 204 Cal.App.4th 65, 83, overruled on other grounds in *Fahlen v. Sutter Central Valley Hospitals* (2014) 58 Cal.4th 655, 686, fn. 18, 687 [radiologist's retaliation and discrimination claims arose from hospital's termination of his contract based on summary suspension; all matters subject to § 425.16, subd. (e)].)

C.  Probability Of Prevailing On The Merits

Once a defendant has shown that the cause of action arose from conduct enumerated in section 425.16, subdivision (e), the burden shifts to the plaintiff to establish a probability of prevailing on the merits.  (*Episcopal Church Cases, supra*, 45

16

Cal.4th at p. 477; *Flatley v. Mauro,* 39 Cal.4th at p. 314; *Equilon, supra*, 29 Cal.4th at p. 67.)  Plaintiff must state and substantiate a legally sufficient claim to establish a probability of prevailing on the claim.  (§ 425.16 subd. (b)(1); *Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056; *Wilson v. Parker, Covert & Chidester, supra,* 28 Cal.4th at p. 821.)  Our Supreme Court explained:  "Put another way, the plaintiff 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by plaintiff is credited.'  [Citations.]"  (*Rusheen v. Cohen, supra,* 37 Cal.4th at p. 1056, quoting *Wilson v. Parker, Covert & Chidester, supra,* 28 Cal.4th at p. 821.)

Here, plaintiff presented no declarations or other evidence to support his causes of action.  As a result, he failed to sustain his burden of proving his causes of action had minimal merit.  Thus, the special motion to strike should have been granted.

One final note is in order.  The trial court indicated that in making its first prong assessment, it could only rely upon the complaint's allegations.  However, section 425.16, subdivision (b)(2) expressly provides that in making its ruling, a trial court takes into account the pleadings and evidence.  (*Equilon, supra,* 29 Cal.4th at p. 67; *Brill Media Co., LLC v. TCW Group, Inc.* (2005) 132 Cal.App.4th 324, 329, 339, disapproved on other grounds in *Simpson Strong-Tie Co., Inc. v. Gore* (2010) 49 Cal.4th 12, 25.)  As can be noted, we have relied upon both the complaint's allegations and the uncontroverted evidence presented by defendant in conducting our first prong analysis.

## D.  Future Proceedings

Defendant is entitled to recover its costs and attorney fees incurred in pursuing the special motion to strike in the trial court and on appeal.  (§ 425.16, subd. (c)(1); *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1131 [attorney fees incurred in trial court]; *Evans v. Unkow* (1995) 38 Cal.App.4th 1490, 1499 [attorney fees incurred on appeal].)  In terms of costs and fees incurred prior to the filing of the notice of appeal, once the remittitur issues, defendant may file an attorney fees motion.  (§ 906; see *Torres v. Automobile*

17

*Club of So. California* (1997) 15 Cal.4th 771, 776; *Lindenstadt v. Staff Builders, Inc.* (1997) 55 Cal.App.4th 882, 894.)  Any request for attorney fees on appeal shall be pursued pursuant to California Rules of Court, rules 3.1702(c)(1) and 8.278(c)(1).

## IV.  DISPOSITION

The order denying the special motion to strike the complaint is reversed.  Upon remittitur issuance, a new order is to be entered granting the special motion to strike. Defendant, City of Burbank, shall recover its costs and attorney's fees from plaintiff, Pete Allen.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

TURNER, P. J.

We concur:

KRIEGLER, J.

MINK, J.[*]

---

[*]Retired judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.