[No. B204869. Second Dist., Div. Seven. Dec. 22, 2008.]

DANIEL J. MILLER, JR., Plaintiff and Appellant, v.
CITY OF LOS ANGELES et al., Defendants and Respondents.

1374

COUNSEL

David Peter Cwiklo for Plaintiff and Appellant.

Rockard J. Delgadillo, City Attorney, Richard M. Brown, General Counsel, and Cecil W. Marr, Assistant City Attorney, for Defendants and Respondents.

**OPINION**

**WOODS, J.—**

## *SUMMARY*

A civil service employee appealed his discharge to the Board of Civil Service Commissioners (Board). After participating in two days of evidentiary hearings and after receiving the hearing examiner's report recommending the Board's approval of his discharge, the employee filed a "withdrawal and/or dismissal" of his appeal and later filed a complaint in the trial court, asserting claims of discrimination and related causes of action against his former employer. On demurrer, the employer argued the discharged employee's complaint was barred by his failure to timely file a petition for administrative mandamus after the final Board decision. The trial court agreed, and the discharged employee appeals from the subsequently entered judgment. We affirm.

## *FACTUAL AND PROCEDURAL SYNOPSIS*

On October 4, 2006, Daniel J. Miller, Jr., was discharged from his position as a construction and maintenance supervisor with the City of Los Angeles (City) Department of Water and Power (Department) for engaging in conduct constituting a conflict of interest, misconduct on the job seriously reflecting on his City employment and theft of City property. The next day, Miller appealed his discharge to the Board.

The Board appointed a hearing officer (Denise M. McGorrin) who conducted evidentiary hearings on January 8 and February 23, 2007. Miller appeared on his own behalf and participated in these hearings. On March 15, the hearing examiner filed a 14-page report in which she summarized the testimony and other evidence and concluded: "The Department presented clear and credible evidence, and met its burden of establishing that [Miller] engaged in activity constituting a conflict of interest, in misconduct on the job seriously reflecting on himself as a Department employee, and in conduct that constituted theft of Department property . . . . As a second level supervisor, [Miller] should have known that it was improper to profit by leasing his personal property to the Department. He was well aware of the Department bidding process and its purpose to ensure a fair opportunity for all bidders and obtaining the lowest cost for the Department, a public agency.

"[Miller] provided no evidence he had legitimate approval from the Department to lease equipment to the Department. He had not disclosed to the Department that he was involved in the rental business. His subleasing the

equipment first to a vendor who would then rent it to the Department suggests that he was not above board about this activity. . . .

"Not only did [Miller] personally profit from the leasing arrangement with [the purported vendor], [Miller] also greatly benefitted from the repairs and refurbishing of both his equipment trailer and office trailer. This work, which was major and cost more than $30,000, was done at taxpayer expense. [Miller] intentionally circumvented Mr. Morris' [the Department shops supervisor's] involvement, who [Miller] knew from e[-]mail directives was responsible for procuring and authorizing repairs to rental equipment."

The hearing examiner further observed that discharge was within the "suggested range" for the latter two of the three counts charged against Miller, and he had presented no evidence discharge was not warranted for those offenses.[1] She recommended in her report that the Board find: the Department had afforded Miller due process in connection with his discharge, the Department's three causes of action against Miller were sustained and Miller's discharge was appropriate.

In a March 19 letter transmitting the hearing examiner's report, the Board stated it would consider the matter on April 26 and further advised Miller: "You are required to appear. Failure to appear may result in consideration of the matter in your absence. Please advise . . . if you are unable to appear before the Civil Service Commission on the aforementioned date."

On April 18, Miller filed his exceptions to the hearing examiner's report, attaching his predischarge response in which he asserted he had been "set up" as "a lot of people who work for the City" had been "allowed" to "do[] business renting equipment to the City for millions of dollars," but he was the one being "target[ed]."

The following day (on Apr. 19), Miller filed a "Notice of Withdrawal and/or Dismissal of Appeal from Discharge" which he said was "effective immediately."

One week later (on Apr. 26), as noticed, the Board considered the hearing examiner's report and notified Miller in a letter dated May 4 it had made all of the findings recommended in the hearing examiner's report, including the determination that Miller's discharge was appropriate and therefore sustained.

---

[1] In his closing argument, Miller said he thought he was doing the Department a favor by making his trailers available for lease and never intended to do anything wrong. He said another supervisor had given him approval for leasing the office trailer, said he had done a good job for the Department in 25 years of service and asked for leniency, as he was close to retirement.

Miller was also advised of the 90-day period for seeking judicial review pursuant to Code of Civil Procedure section 1094.6.[2]

In a letter dated June 22, counsel for Miller (David Peter Cwiklo) stated that the hearing examiner had a conflict of interest, Miller had been deprived of due process in " 'star chamber' proceedings" and fabricated evidence had been used as a "ruse to mask the longstanding custom, practice and policy of LADWP Caucasian management discriminating against Owens Valley Native Americans." He said the Board had taken action on a matter that "simply did not exist" in an effort to "stack the predetermined results of the kangaroo court down his throat." In light of Miller's "withdrawal/dismissal," the Board exceeded the scope of its authority. He demanded acknowledgement of the Board's "mistake."

On July 10, the Board responded: "Personnel Department Policy 24.6 states, in part that 'Once a hearing commences, the appellant cannot unilaterally withdraw his/her appeal after presentation of the evidence.' Therefore, Mr. Miller's withdrawal was not within the established guidelines and was not granted.

"Notice dated March 19, 2007, informed Mr. Miller that he was required to appear and that failure to appear may result in consideration of his matter in his absence. The [Board] office telephonically informed Mr. Miller on April 20, 2007, that the matter would remain on calendar and that appearances were necessary. Mr. Miller failed to appear and the Board took action in support of the hearing examiner's recommendations. The matter was properly before the Board and the May 4, 2007, notice of action is correct as the Board did, in fact, act within its authority." The letter reiterated Miller had the opportunity to seek "judicial review of his discharge within the 90-day period specified in [section] 1094.6."

On June 25 (eight months after his discharge), Miller (represented by Cwiklo) then filed a governmental tort claim (which the City denied as untimely) as well as a discrimination, harassment and retaliation claim with the Department of Fair Employment and Housing for which he received a right-to-sue notice. On July 24, he filed a complaint against the City and two of its employees (hereinafter included in our further references to the City), asserting six claims relating to alleged racial discrimination, harassment, retaliation and failure to correct as well as intentional infliction of emotional distress and defamation (based on his termination and underlying findings).

[2] All further statutory references are to the Code of Civil Procedure.

The City demurred, arguing Miller's entire complaint was barred by his failure to challenge the Board's final decision by administrative mandamus.[3] The City also filed a special motion to strike pursuant to section 425.16, claiming the causes of action arose from protected activity.

Over Miller's opposition, the trial court sustained the City's demurrer to the entire complaint without leave to amend and also granted the special motion to strike as to the emotional distress and defamation causes of action.[4]

Miller appeals from the subsequently entered judgment.

## *DISCUSSION*

According to Miller, his complaint was not barred because the Board had no jurisdiction to decide a dismissed action until the City set aside his dismissal of his appeal. Rather, he says, he had an "absolute right to choose his FEHA remedies and was not required to exhaust the City internal remedies." We disagree.

In *Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61 [99 Cal.Rptr.2d 316, 5 P.3d 874] (*Johnson*), our Supreme Court determined: "[U]nless a party to a quasi-judicial proceeding challenges the agency's adverse findings made in that proceeding, by means of a mandate action in superior court, those findings are binding in later civil actions. This requirement of exhaustion of judicial remedies is to be distinguished from the requirement of exhaustion of administrative remedies. [Citation.] Exhaustion of *administrative* remedies is 'a jurisdictional prerequisite to resort to the courts.' [Citation.] Exhaustion of *judicial* remedies, on the other hand, is necessary to avoid giving binding 'effect to the administrative agency's decision, because that decision has achieved finality due to the aggrieved party's failure to pursue the exclusive *judicial* remedy for reviewing administrative action.' [Citation.]" (*Id.* at pp. 69–70, original italics, fn. omitted.) Further, "Refusing to give binding effect to the findings of administrative agencies in quasi-judicial proceedings would . . . undermine the efficacy of such proceedings, rendering them in many cases little more than rehearsals for litigation." (*Id.* at p. 72.)

Later, in *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1088 and 1089 [6 Cal.Rptr.3d 457, 79 P.3d 569] (*Schifando*), the court rejected a rule requiring city employees to exhaust internal administrative remedies before

---

[3] Miller had not mentioned the administrative proceedings in his complaint, but the trial court granted the City's request for judicial notice of the related documents.

[4] At the initial hearing, the trial court focused on the language of personnel policy 24.6 and received supplemental briefing in this regard but at the continued hearing stated it relied only on the prior briefing.

filing a discrimination claim under California Fair Employment and Housing Act (FEHA; Gov. Code, § 12900 et seq.) but emphasized: "A city employee would indeed tread onto a 'procedural minefield' if a claim was filed with Department [of Fair Employment and Housing] at the same time remedies were pursued under the City Charter. The benefits of judicial economy, agency expertise, and potential for swift resolution of grievances are better served by a rule that allows aggrieved public employees to seek redress in the forum that is most appropriate to their situation."

The *Schifando* court clarified that its holding did not disturb the principles set forth in *Johnson, supra*, 24 Cal.4th 61: "We serve judicial economy by giving collateral estoppel effect to appropriate administrative findings. *Johnson*'s requirement that employees exhaust *judicial* remedies ensures proper respect for administrative proceedings. It requires employees challenging administrative findings to do so in the appropriate forum, by filing a writ of administrative mandamus petition in superior court. *Johnson* also ensures that *employees who choose to utilize internal procedures are not given a second 'bite of the procedural apple.'* However, we do not serve judicial economy if we *require* employees who have allegedly suffered discrimination at the hands of public employers to pursue redress in *two separate forums.*" (*Schifando, supra*, 31 Cal.4th at pp. 1090–1091, first italics in original, other italics added.)

In *Page v. Los Angeles County Probation Dept.* (2004) 123 Cal.App.4th 1135 [20 Cal.Rptr.3d 598] (*Page*), the court addressed the application of *Johnson* and *Schifando* under analogous circumstances. In that case, the plaintiff filed a grievance before the Los Angeles County Civil Service Commission (Commission) and participated in hearings, and the hearing officer issued a lengthy statement of decision and recommendation (but the Commission had not issued a final decision). The plaintiff filed exceptions to the recommended findings but then filed a discrimination complaint with the Department of Fair Employment and Housing, received a right-to-sue letter and filed a complaint alleging disability discrimination under FEHA. (123 Cal.App.4th at pp. 1138–1140.)

The probation department demurred on grounds Page had failed to exhaust her administrative remedy before the Commission, failed to challenge the hearing officer's adverse findings by the only available judicial remedy (a petition for writ of administrative mandamus), and the Commission's adverse decision barred her FEHA action.

■ The *Page* court determined that the trial court properly sustained the demurrer without leave to amend. "[G]overnment employees who believe they have suffered employment discrimination may choose to pursue remedies provided by *either* the Fair Employment and Housing Act (FEHA) *or*

internal grievance procedures such as a city, county or state civil service commission. Public employees who choose to file a complaint before the DFEH are not required to exhaust the remedies provided by a civil service commission. The *Schifando* court reasoned that some plaintiffs prefer the summary procedures of the civil service commission while others would prefer to bypass the administrative process and file a lawsuit to vindicate civil rights, and that *giving the choice of forum to plaintiffs* best serves the legislative purposes of FEHA." (*Page, supra,* 123 Cal.App.4th at pp. 1141–1142, some italics added, citing *Schifando, supra,* 31 Cal.4th at p. 1087.)

The *Page* court continued: "The *Schifando* court made plain that, *having chosen* a forum for discrimination claims, a public employee must exhaust 'the chosen administrative forum's procedural requirements.' . . . Moreover, if a public employee has requested a non-FEHA administrative remedy such as a civil service commission hearing and obtained an adverse decision, the employee must exhaust judicial remedies by filing a petition for writ of mandate in the trial court, or else the administrative decision will be binding on subsequent FEHA claims. . . ." (*Page, supra,* 123 Cal.App.4th at p. 1142, some italics added, citations omitted, citing *Schifando, supra,* 31 Cal.4th at pp. 1088–1091.)

"Page *chose* the civil service commission process and proceeded through three days of hearing over the course of four months, resulting in a comprehensive decision by the hearing officer. Page was *not then free to ignore and abandon the administrative process and proceed to a FEHA action for damages.* Page had to await a final Commission decision and, if it was adverse, then file a petition for writ of mandate in the trial court to overturn the Commission decision. Only if she had done so and prevailed in the writ proceedings, thus vacating the Commission decision, could she have then filed a lawsuit, since the Commission's decision has *issue and claim preclusive effect.* . . ." (*Page, supra,* 123 Cal.App.4th at p. 1142, italics added.)

"The *Schifando* court concluded that, to avoid such a 'procedural minefield,' and to achieve the 'benefits of judicial economy, agency expertise, and potential for swift resolution of grievances,' public employees may choose what forum is most appropriate to their situation. . . . [¶] *Page, however, proceeded headlong into the 'procedural minefield.'* The Commission's hearing officer rejected her claims of disability discrimination and failure to accommodate, and the Commission had not issued a final decision when she filed this lawsuit. Page never filed a petition for writ of administrative mandamus to overturn the adverse decision of the Commission. Instead, she filed a premature FEHA action over which the trial court lacked

jurisdiction because she failed to exhaust both her administrative and judicial remedies. Now, confronted with a possible time bar to pursuing FEHA claims, she asks us to revive her discrimination lawsuit notwithstanding her failure to exhaust the requisite administrative and judicial remedies. That we cannot do." (*Page, supra*, 123 Cal.App.4th at pp. 1142–1143, italics added, citation omitted.)

"Public employees have the benefit of the civil service commission process to redress discrimination, which is less costly and protracted than litigation. Though a public employee may choose to bypass the administrative process, *if []he pursues it through evidentiary hearings to a proposed decision*, then []he has the burden to exhaust administrative and judicial remedies notwithstanding the risk that a FEHA claim may no longer be viable." (*Page, supra*, 123 Cal.App.4th at pp. 1143–1144, italics added.)

█ Miller's reliance on his notice of "withdrawal/dismissal" misses the mark. By the time he submitted this document, he too had participated in multiple hearings, cross-examined witnesses, presented evidence and received the lengthy report and recommendation of the hearing examiner. Under these circumstances, just as in *Page*, Miller was obligated to exhaust his judicial remedies, yet failed to do so.[5] Therefore, for the reasons addressed in *Castillo v. City of Los Angeles* (2001) 92 Cal.App.4th 477, 481–487 [111 Cal.Rptr.2d 870], the administrative decision was final and on the merits and, consequently, entitled to collateral estoppel effect.[6] As the *Johnson* court stated: "We conclude that when, as here, a public employee pursues administrative civil service remedies, receives an adverse finding, *and fails to have the finding set aside through judicial review procedures*, the adverse finding is binding on discrimination claims under the FEHA." (*Johnson, supra*, 24 Cal.4th at p. 76, italics added.) Under the applicable case law, the trial court properly sustained the City's demurrer to the entirety of his complaint

---

[5] In Miller's case, unlike in *Page*, the decision had become final.

[6] Collateral estoppel or issue preclusion prevents relitigation of issues argued and decided in prior proceedings, including " 'issues which were previously resolved in an administrative hearing by an agency acting in a judicial capacity.' " (*Castillo v. City of Los Angeles, supra*, 92 Cal.App.4th at p. 481.) For collateral estoppel to apply, the following requirements must be met: (1) the issue is identical to that decided in the former proceeding, (2) the issue was actually litigated in the former proceeding, (3) the issue was necessarily decided in the former proceeding, (4) the decision in the former proceeding is final and on the merits, and (5) preclusion is sought against a party or a person in privity with a party to the former proceeding. (*Ibid.*) Then, if the public policies of " 'preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation' " will be furthered, relitigation is barred. (*Ibid.*) For the reasons explained in the *Castillo* case, all of the requirements for collateral estoppel were met in this case as well.

without leave to amend.[7] Given the finality of the hearing examiner's determination, Miller was collaterally estopped from arguing in his complaint that his termination was wrongful. (See *Knickerbocker v. City of Stockton* (1988) 199 Cal.App.3d 235, 243 [244 Cal.Rptr. 764].)

■ The trial court also granted the City's special motion to strike Miller's fifth and sixth causes of action for defamation and intentional infliction of emotional distress. (§ 425.16.) When a special motion to strike is filed, the trial court must first assess whether the moving party has satisfied "the initial burden of establishing a prima facie case that the plaintiff's cause of action arose out of the defendant's actions in the furtherance of the rights of petition or free speech." (*Hutton v. Hafif* (2007) 150 Cal.App.4th 527, 537 [59 Cal.Rptr.3d 109].) Then the burden shifts to the plaintiff to establish the probability that he or she will prevail on the merits. (*Ibid.*)

Pursuant to subdivision (e) of section 425.16, " 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

Here, the thrust of Miller's defamation and intentional infliction of emotional distress claims is the City's investigation into Miller's conduct in connection with his public employment and its determination and report that he had engaged in misconduct on the job constituting a conflict of interest as well as theft of City property. On this record, the first prong of section 425.16 is satisfied. (See *Gallanis-Politis v. Medina* (2007) 152 Cal.App.4th 600 [61 Cal.Rptr.3d 701].) As for the second prong, because Miller is collaterally estopped from arguing that his termination was wrongful in light of the finality of the administrative proceedings concluding he was properly terminated (as addressed in connection with the ruling on the City's demurrer), Miller cannot meet his burden of establishing a probability of prevailing on the merits of these two claims. (See *Knickerbocker v. City of Stockton, supra,* 199 Cal.App.3d at p. 243.)

---

[7] As for Miller's passing argument he was not required to exhaust the City's internal remedies under the "futility doctrine" of *Dixon v. Regents of California*, his reliance is misplaced as the *Dixon* case has been depublished. (*Dixon v. Regents of University of California* (Oct. 23, 2003, B161390) review den. and opn. ordered nonpub. Feb. 4, 2004, S120845.)

## *DISPOSITION*

The judgment is affirmed. The City is entitled to its costs of appeal as well as its attorney fees under subdivision (c) of section 425.16.

Perluss, P. J., and Zelon, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 18, 2009, S169958.