Filed 11/16/15  Marzan v. Las Virgenes Municipal Water Dist. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| ROMMEL MARZAN, | B259273 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC488570) |
| v. | |
| LAS VIRGENES MUNICIPAL WATER DISTRICT, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Ernest M. Hiroshige, Judge.  Affirmed.

Michael P. Calof for Plaintiff and Appellant.

Wood, Smith, Henning & Berman, Kevin D. Smith, Stacey F. Blank and Nicholas M. Gedo, for Defendant and Respondent.

_____

The Las Virgenes Municipal Water District (District) terminated Rommel Marzan, an engineer with the District for 21 years, after it found he had used a District vehicle for personal purposes and lied during an investigation into the incident. Marzan, who did not seek judicial review of the decision by the District's board of directors (Board) upholding his termination, sued the District, asserting claims including wrongful termination, discrimination based on national origin and physical disabilities, failure to accommodate and retaliation. The trial court granted summary judgment in favor of the District, finding Marzan had failed to exhaust his administrative and judicial remedies. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Incident Giving Rise to Marzan's Termination*

According to Marzan, on April 6, 2010 he drove a District vehicle to his friend Dorna McKee's house while on a break after completing several site visits. Marzan wanted to check on McKee's welfare because her son had recently died and to deliver a low flow shower head, which the District was providing to its customers. McKee was not there, but her roommate permitted Marzan to enter the home. Marzan stepped on McKee's dog, Buttons, killing it. He disposed of the body in a dumpster.

McKee contacted the Los Angeles County Sheriff's Department after Marzan told her he had accidentally killed Buttons. As reflected in an incident report completed in connection with Marzan's arrest, McKee informed the responding deputies that Buttons had been treated about three weeks earlier for liver and kidney damage consistent with having been hit shortly after spending a few minutes alone with Marzan, whom she was dating. Buttons ran into the bedroom and cowered whenever Marzan came over after that, so McKee told him he was no longer permitted in the home.

The deputies contacted Marzan telephonically, and he agreed to meet with them. Acting nervously and avoiding eye contact, Marzan explained he had lightly kicked Buttons toward the bedroom because, even though the front door was closed, he was afraid the dog was going to run away. While kicking the standing dog, he accidentally stepped on its head. After initially lying about the disposal of Buttons's body, Marzan

2

took the deputies to the dumpster where it was recovered. The deputies arrested Marzan for animal cruelty (Pen. Code, § 597, subd. (a)), and he was charged with that crime on April 19, 2010.

2. *The District's Investigation into the Incident*

On April 13, 2010 the District retained Katherine Edwards to investigate whether Marzan had engaged in work-related misconduct. At the outset of Marzan's initial interview on April 27, 2010, Edwards advised Marzan, who was represented by counsel, that failure to answer the District's questions might subject him to termination and any information he was compelled to provide could not be used against him in a criminal proceeding. Marzan's attorney responded that Marzan's statements could be used to impeach him if he testified at his criminal trial and, on that basis, advised Marzan not to answer questions about what happened during his "break time."

Describing his "on the clock" activities on April 6, 2010, Marzan contended he had visited three construction sites that afternoon, including the Mulwood Tank site. He identified the route he had taken and estimated the drive time together with the time he spent at each site totaled 55 to 59 minutes. Marzan said he took his break between 3:10 and 3:30 p.m., stopping at McKee's on his way back to the office from the third site, and then drove back to the District premises, returning the vehicle to the operations building parking lot.

Edwards interviewed 12 additional witnesses, personally drove (and timed) the route taken by Marzan and reviewed additional materials including video footage of Marzan in the employee parking garage and electronic reports reflecting access to that garage and use of the vehicle entry gate for the operations building. Based on her evaluation of this information, Edwards found Marzan's account of his work-related activities on April 6, 2010 was not credible. The evidence established Marzan had retrieved the District vehicle at approximately 2:31 p.m. and returned to the employee parking garage at 3:03 p.m. Video footage and witness testimony established Marzan transferred something from the District vehicle to his personal car in the employee parking garage at that time. (Marzan claimed he did not recall doing so.) The evidence

3

further demonstrated Marzan once again left in the District vehicle at 3:05 p.m., returning at 3:35 p.m. In finding Marzan's account lacked credibility, Edwards explained it was impossible for Marzan to have completed the nearly 60-minute route he had described and also taken a 20-minute break to visit McKee before returning to the District premises in the time between when he first left and then returned. In addition, no one had seen him at the Mulwood Tank site, which was small and somewhat busy; and Marzan could not describe who was there or what activity was taking place. Also, "[t]he investigation revealed a historical perception that Mr. Marzan has not always accurately represented his whereabouts during working hours."[1]

3. *The District's Termination of Marzan for Violation of Multiple Policies*

In a notice of intent to terminate dated June 15, 2010, David Lippman, the director of facilities and operations for the District, informed Marzan he was going to recommend Marzan be terminated because he had lied about his whereabouts on April 6, 2010 and personally used a District vehicle to drive to McKee's house in violation of several District policies and its code of ethics. The letter advised Marzan he had a right to respond in person and/or in writing. After reviewing a letter from Marzan's attorney, the District's general manger, John Mundy, informed Marzan he was terminated, effective July 8, 2010. Marzan appealed the decision to the Board.

On August 9, 2010 the District sent Marzan an amended notice of termination. It was similar to the original notice except it identified additional policies and District orders Marzan had violated. On November 2, 2010, after considering Marzan's attorney's response to the initial notice of intent to terminate as well as Marzan's two letters in response to the amended notice, the District again terminated Marzan. Mundy

---

[1] Several witnesses described Marzan's "habit of lengthy, unaccounted for absences from the office." One said, "[I]t became a joke about where Mr. Marzan was 'hiding' when he could not be located" during long periods around lunchtime. After unsuccessfully trying to address the issue by requiring Marzan to identify the specific sites he intended to visit on the office whiteboard, instead of just indicating "field," Marzan's supervisor, John Zhao, instructed Marzan to obtain his approval before scheduling site visits before or after lunch.

explained, "As set forth below, neither Response I nor Response II address[es] the charges against you in any meaningful way. Instead, you have chosen to attack the District, its employees and officials, and the Investigator, finding fault with each of them for a variety of reasons. You attempt to deflect any evaluation or criticism of your conduct, and wrongdoing on your part, by these attacks on the integrity and the motives of nearly every person involved in this investigation." The notice of termination provided, "In accord with the District's established practice, an employee may appeal his or her termination to the District's Board of Directors . . . ."

On November 6, 2010 Marzan appealed his termination to the Board. The hearing, originally scheduled for February 18, 2011, was twice continued at Marzan's request until October 20, 2011. The District advised Marzan's attorney it would not continue the hearing again.

4. *The Administrative Complaint for Discrimination*

In a letter dated April 13, 2011 to the United States Equal Employment Opportunity Commission (EEOC) Marzan stated he was formally filing a complaint against the District for retaliation and discrimination based on disability and national origin under title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.). Marzan contended the District had unlawfully terminated him on July 8, 2010 and "[s]ubsequent acts of [the District] consistent with deceit and subterfuge include a SECOND formal unlawful termination on November 8, 2010." The EEOC responded, "Your *intake questionnaire* concerning allegations of employment discrimination . . . has been received by our office and reviewed. The questionnaire has been given the above-referenced charge number. . . . [¶] We will be in contact with you soon to schedule an interview appointment."

On July 29, 2011 Marzan filed a form complaint with the California Department of Fair Employment and Housing (DFEH) alleging, consistent with the EEOC complaint, discrimination on the basis of national origin, disability and retaliation. In the section labeled "Date(s) discrimination took place," Marzan identified the earliest date as July 8, 2010 and the latest date as November 8, 2010. He did not check the box characterizing

5

the discrimination as a "continuing action." In the section provided to identify the "particulars," Marzan wrote, "I. On or about July 8, 2010 I was discharged. Subsequent acts of [the District] consistent with deceit and subterfuge included a second formal unlawful termination on or about November 8, 2010. [¶] II. Unfounded & flimsy reasons were give to me for the discharges. [¶] III. I believe I have been discriminated against due to my national origin, disability and in retaliation which are in violation of Title VII of The Civil Rights Act of 1964, as amended and the Americans with Disabilities Act of 1990 as amended." The complaint indicated the charges had also been presented to the EEOC and included the charge number assigned by the EEOC.

On August 8, 2011 Marzan received a right to sue notice from the DFEH. The notice stated the DFEH was closing its case on the basis of "'processing waived to another agency.'" It also advised that the EEOC, which was responsible for processing the complaint, should be contacted directly for any discussion of the charge. The notice further informed Marzan there was a one-year period within which he was required to file a lawsuit in state court asserting his FEHA claims, but explained the limitations period would be tolled during the pendency of the EEOC's investigation. Marzan was directed to contact the EEOC about the right to file suit under federal law.

On August 26, 2011 Marzan submitted to the EEOC a package of exhibits denoted "Addendum No. 1" in support of his complaint. On November 29, 2011 Marzan submitted "Addendum No. 2," an 18-page document detailing alleged discriminatory acts by the District including failing to promote him in 2009 and meting out harsher discipline to him than to other employees who had engaged in work-related misconduct.

5. *The Board's Decision Upholding Marzan's Termination*

On October 18, 2011, two days before the Board hearing was scheduled to begin, Marzan advised the Board, under the advice of counsel, he would not participate in any hearing until the criminal case against him was resolved pursuant to his Fifth Amendment privilege against self-incrimination. Marzan asserted, if the Board elected to proceed in

6

his absence, he was withdrawing his appeal pending resolution of the criminal case.[2] The Board denied Marzan's request for a continuance.

On November 23, 2011 the Board issued its decision upholding Marzan's termination. With respect to denying Marzan's request for a continuance, the Board found, "[T]his request is not well-taken because the criminal matter hinges on an issue which is not relevant to his termination appeal. The criminal case concerns whether Mr. Marzan's killing of Ms. McKee's dog was intentional or accidental. Mr. Marzan has repeatedly acknowledged that he killed Ms. McKee's dog, but claims the killing was an accident. Whether or not this claim is true is immaterial to this ruling. For purposes of this ruling, the District is only concerned with whether Mr. Marzan used a District vehicle for personal purposes and subsequently lied about it."[3] Substantively, the Board found Marzan's termination was appropriate because, in addition to having used a District vehicle for personal purposes in violation of District policy, the evidence presented at the hearing established, "Mr. Marzan had a pattern and practice of misappropriating the District vehicle for personal use. Mr. Marzan was unresponsive to requests that he modify his behavior. In fact, he was consistently abusive to his supervisors. Ultimately, he provided false and misleading information [to] the District's investigator and his supervisors in an effort to avoid punishment for his wrongdoing."

The decision stated Marzan had 90 days to file a petition for writ of mandate if he intended to seek judicial review.

6. *The Complaint and First Amended Complaint Asserting Causes of Action for Wrongful Termination and Discrimination*

Marzan did not file a petition for writ of mandate challenging the Board's decision. Rather, on July 20, 2012 Marzan sued the District for disability and national origin discrimination and disparate treatment in violation of the Fair Employment and

---

[2] On October 19, 2011 Marzan's attorney wrote the Board a letter "endeavor[ing] to clarify" Marzan's position and informing the Board the attorney had withdrawn as counsel and would not be representing Marzan at the hearing.

[3] On March 22, 2012 Marzan was found not guilty of animal cruelty.

Housing Act (FEHA) (Gov. Code, § 12940, subd. (a)),[4] denial of reasonable accommodation (§§ 12940, subds. (m) & (n), 12926), retaliation (§ 12940, subd. (j)(1)), hostile work environment (§ 12940, subds. (a) & (k)) and wrongful termination. After the trial court sustained the District's demurrer with leave to amend, Marzan filed a first amended complaint asserting the same causes of action. The amended complaint in part alleged Marzan had been rejected for a promotion because of his Filipino nationality; by refusing to give him extensions on deadlines and allow him to maintain his workspace in a disorganized manner, the District had failed to accommodate his medical conditions of psoriatic arthritis, depression and obsessive-compulsive disorder; Marzan's supervisor, David Lippman, fabricated charges against him to justify his termination in retaliation for Marzan having complained about Lippman's discriminatory treatment of him; and his wrongful termination "was a further demonstration of [the District's] continuing pattern of discrimination, harassment and the creation of a hostile work environment which [Marzan] had to endure during his employment with [the District]."

7. *The Order Granting Summary Judgment in Favor of the District*

On April 1, 2014 the District moved for summary judgment, or summary adjudication in the alternative, on several grounds. The trial court granted the motion, finding Marzan's wrongful termination cause of action could not stand because he had failed to seek judicial review of the Board's decision upholding his termination and his causes of action based on violation of FEHA were barred because the administrative complaint filed with the DFEH only put at issue his termination, not the other conduct he had alleged violated FEHA. Moreover, the court explained, even if the addenda Marzan filed with the EEOC had identified the misconduct that was the basis for his statutory causes of action, they were nevertheless time-barred because the alleged misconduct had occurred prior to 2009. Finally, the court found, even if Marzan had not failed to exhaust his administrative and judicial remedies, summary judgment was warranted because the causes of action were without merit.

---

4  Statutory references are to this code unless otherwise indicated.

8

# DISCUSSION

## 1. *Standard of Review*

A motion for summary judgment is properly granted only when "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) We review a grant of summary judgment de novo and decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law. (*Hartford Casualty Ins. Co. v. Swift Distribution, Inc.* (2014) 59 Cal.4th 277, 286; *Schachter v. Citigroup, Inc*. (2009) 47 Cal.4th 610, 618.) Exhaustion of judicial and administrative remedies are questions of law also subject to de novo review. (See *North Coast Rivers Alliance v. Marin Municipal Water Dist. Bd. of Directors* (2013) 216 Cal.App.4th 614, 624.)

## 2. *The Wrongful Termination Cause of Action Is Barred by Collateral Estoppel*

### a. *Exhaustion of judicial remedies in cases alleging FEHA and FEHA-related claims*

Employees who believe they have suffered discrimination at the hands of their employers and wish to file civil claims for damages under FEHA must first exhaust their administrative remedies by filing a complaint with the DFEH and obtaining a right-to-sue notice. (See, e.g., *Rojo v. Kliger* (1990) 52 Cal.3d 65, 72, 83; *Basurto v. Imperial Irrigation Dist.* (2012) 211 Cal.App.4th 866, 879.) Employees also may, but are not required to, pursue internal administrative remedies offered by their employer. (See *McDonald v. Antelope Valley Community College Dist.* (2008) 45 Cal.4th 88, 113; *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1092 [municipal employee need not exhaust city's internal remedies prior to filing a complaint with the DFEH].) However, if an employee voluntarily elects to first seek relief through the employer's internal procedures, he or she must fully exhaust that avenue of relief, completing not only the administrative procedures themselves, but also the available judicial remedies— petitioning for an administrative writ of mandate and appeal from any order on that petition. Unless challenged and set aside in a timely mandamus proceeding, adverse

9

quasi-judicial administrative findings will be binding in the employee's subsequent FEHA and FEHA-related nonstatutory claims in accordance with general principles of collateral estoppel. (*McDonald,* at p. 113 ["[O]nce a decision has been issued, provided that decision is of a sufficiently judicial character to support collateral estoppel, respect for the administrative decisionmaking process requires that the prospective plaintiff continue that process to completion, including exhausting any available judicial avenues for reversal of adverse findings. [Citation.] Failure to do so will result in any quasi-judicial administrative findings achieving binding, preclusive effect and may bar further relief on the same claims."]; see *Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 76 ["[w]e conclude that when, as here, a public employee pursues administrative civil service remedies, receives an adverse finding, and fails to have the finding set aside through judicial review procedures, the adverse finding is binding on discrimination claims under FEHA"]; *Schifando,* at pp. 1090-1091 [by requiring plaintiff to set aside adverse adjudicatory findings in mandamus proceeding before pursuing a civil action, "*Johnson* . . . ensures that employees who choose to utilize internal procedures are not given a second 'bite of the procedural apple'"]; cf. *Miller v. City of Los Angeles* (2008) 169 Cal.App.4th 1373, 1382-1383 [where city employee appealed his discharge to the Board of Civil Service Commissioners, but failed to challenge the hearing examiner's determination by administrative mandate action in superior court, hearing examiner's determination and findings were binding in subsequent court action for discrimination, harassment, retaliation and intentional infliction of emotional distress].)[5]

"This requirement of exhaustion of judicial remedies is to be distinguished from the requirement of exhaustion of administrative remedies. [Citation.] Exhaustion

---

[5] FEHA-related nonstatutory claims include tort claims, such as wrongful termination, implicating violation of FEHA's public policy proscribing discrimination. (See *Williams v. Housing Authority of Los Angeles* (2004) 121 Cal.App.4th 708, 713, fn. 2.) Because "'employment discrimination cases by their very nature, involve several causes of action arising from the same set of facts[,] [a] responsible attorney handling an employment discrimination case must plead a variety of statutory, tort and contract causes of action in order to fully protect the interest of his or her client.'" (*Ibid.*)

of *administrative* remedies is 'a jurisdictional prerequisite to resort to the courts.' [Citation.] Exhaustion of *judicial* remedies, on the other hand, is necessary to avoid giving binding 'effect to the administrative agency's decision, because that decision has achieved finality due to the aggrieved party's failure to pursue the exclusive *judicial* remedy for reviewing administrative action.'" *(Johnson v. City of Loma Linda, supra,* 24 Cal.4th at p. 70; see *Murray v. Alaska Airlines, Inc.* (2010) 50 Cal.4th 860, 876 ["'unless a party to 'a quasi-judicial administrative agency proceeding' exhausts available judicial remedies to challenge the adverse findings made in that proceeding, those findings may be binding in later civil actions"].) "Generally speaking, if a complainant fails to overturn an adverse administrative decision by writ of mandate, 'and if the administrative proceeding possessed the requisite judicial character [citation], the administrative decision is binding in a later civil action brought in superior court.'" *(Runyon v. Board of Trustees of California State University* (2010) 48 Cal.4th 760, 773.)[6]

As discussed, the Board found good cause existed to discipline Marzan and termination was the appropriate level of discipline. Unless, as Marzan contends, his failure to challenge those findings by petition for writ of mandate was excused, those findings are binding in this civil action and necessarily preclude his cause of action for wrongful termination under principles of collateral estoppel. (See *Castillo v. City of Los Angeles* (2001) 92 Cal.App.4th 477, 480-481 [plaintiff alleged he had been dismissed because of his age or national origin; cause of action for wrongful termination in violation of public policy, as well as those based on violations of FEHA, barred by findings in administrative proceeding that plaintiff's discharge was appropriate discipline for unsatisfactory attendance and failure to improve].) Neither of the reasons advanced by Marzan defeat the collateral estoppel effect of the Board's adverse findings.[7]

---

[6]  Judicial review of the decision of a local agency is governed by Code of Civil Procedure section 1094.5. (See Code Civ. Proc., § 1094.6.)

[7]  Marzan does not contend he was excused from exhausting his judicial remedies because he attempted to withdraw his appeal to the Board. (Compare *Miller v. City of Los Angeles*, *supra*, 169 Cal.App.4th at p. 1382 [former employee's effort to withdraw or

11

b. *Marzan's subjective belief the Board's findings were inadequate did not excuse him from the requirement of exhausting his judicial remedies*

Citing *Topanga Assn. for a Scenic Community v. County of Los Angeles* (1974) 11 Cal.3d 506 (*Topanga*), Marzan contends he was excused from challenging the Board's decision by writ of mandate because the Board did not adopt independent findings of fact and conclusions of law in support of its decision. In *Topanga* the Supreme Court held administrative agencies must set forth findings to support the granting of zoning variances. (*Id.* at p. 509.) We agree *Topanga* is not limited to cases involving zoning variances or land use. As the Court more broadly explained, "[I]mplicit in [Code of Civil Procedure section] 1094.5 is that the agency which renders the challenged decision must set forth findings to bridge the analytic gap between the raw evidence and ultimate decision or order." But Marzan's argument that *Topanga*, which was before the Supreme Court on direct review in a proceeding under Code of Civil Procedure section 1094.5, somehow excuses a party from judicially challenging an agency decision when the party contends the decision does not contain independent or adequate findings is wholly without merit. Any challenge to the adequacy of the procedures used in the administrative proceedings must be raised in the superior court in mandamus

dismiss his appeal from discharge did not excuse requirement to exhaust judicial remedies because, "[b]y the time he submitted this document he too had participated in multiple hearings, cross-examined witnesses, presented evidence and received the lengthy report and recommendation of the hearing examiner"] with *Murray v. Alaska Airlines, Inc.*, *supra*, 50 Cal.4th at p. 869 ["'[i]t is the *opportunity to litigate* that is important in these cases, not whether the litigant availed himself or herself of the opportunity'"].) By failing to raise that issue either before the trial court or on appeal, supported by argument and authority, it has been forfeited. (See *North Coast Business Park v. Nielsen Construction Co.* (1993) 17 Cal.App.4th 22, 31 ["'possible theories not fully developed or factually presented to the trial court cannot create a "triable issue" on appeal,'" italics omitted]; *Landry v. Berryessa Union School Dist.* (1995) 39 Cal.App.4th 691, 699-700 ["[w]hen an issue is unsupported by pertinent or cognizable legal argument it may be deemed abandoned and discussion by the reviewing court is unnecessary"]; *Mansell v. Board of Administration* (1994) 30 Cal.App.4th 539, 545-546 [appellant's brief must contain a legal argument with citation of authorities on the points made; if none is furnished, the court may pass on the contention without further consideration].)

12

proceedings. (See *Schifando v. City of Los Angeles*, *supra*, 31 Cal.4th at p. 1090 [*Johnson v. City of Loma Linda*, *supra*, 24 Cal.4th at page 72, "requires employees challenging administrative findings to do so in the appropriate forum, by filing a writ of administrative mandamus petition in superior court"]; *Miller v. Superior Court*, *supra*, 169 Cal.App.4th at p. 1380; see also § 1094.5, subd. (b) ["[a]buse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence"].)

Moreover, Marzan's argument the Board's decision lacked reviewable findings is puzzling at best. The Board's written decision, issued on November 23, 2011, included several findings and identified evidence in support of the findings. For example, the decision stated, "Mr. Marzan has admitted he took a District vehicle during office hours and drove the vehicle to Ms. McKee's house. . . . The District has received evidence that this visit was not permitted by Mr. Marzan's supervisors. The testimony of Mr. Sinett, [(McKee's roommate),] places [Marzan] at Ms. McKee's house during business hours. Therefore, the District finds that good cause supports a finding . . . ." The Board also found, based on Edwards's testimony and the District's surveillance records, "the record is clear that Mr. Marzan lied to his superiors and the District investigator regarding his whereabouts during the time he was at Ms. McKee's residence."

> c. *The pendency of the criminal proceedings did not excuse Marzan from exhausting his judicial remedies*

As Marzan describes it, the "crux and essence" of his appeal is the "Hobson's choice decision that a State employee must face when simultaneously charged with a felony and a pending disciplinary Administrative Hearing." He contends his Fifth Amendment privilege against self incrimination would have been abridged if he had been compelled to appear and testify at the administrative proceeding. Thus, he argues, because the Board's decision was not rendered after a full and fair hearing, it did not meet the requirement for a binding quasi-judicial administrative decision.

Marzan's argument is misguided in several respects. As the Board explained, whether Marzan had intentionally killed Buttons—the subject of the criminal charges—was not relevant to the disciplinary proceedings. In his interview with Edwards Marzan did not address how Buttons was killed, and he did not need to do so at the Board hearing. Rather, his testimony could have properly focused solely on his work activities on April 6, 2010 and addressed his use of a District vehicle for personal purposes and the perception he was often not where he said he would be when in the field.

Moreover, even if Marzan's conduct implicating the criminal charges were at issue in the disciplinary proceedings, the Supreme Court has held an "employer may discipline, and even dismiss, a public employee for refusing, on grounds of the constitutional privilege, to answer the employer's job-related questions, so long as the employee is not required, as a condition of remaining in the job, to *surrender* his or her right against criminal use of the statements thus obtained—at least where, as here, the employee is specifically advised that he or she retains that right." (*Spielbauer v. County of Santa Clara* (2009) 45 Cal.4th 704, 725.) To the extent Marzan contends *Spielbauer* was wrongly decided, we nevertheless must follow it, as would the trial court in any criminal proceeding. (*AutoEquity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455-456 [intermediate court bound to follow binding precedent of higher reviewing court].) Finally, as discussed, nothing in *Topanga*, upon which Marzan relies, or other relevant authority excuses an employee from exhausting his or her judicial remedies. Marzan should have presented his Hobson's choice argument to the superior court in a mandamus proceeding challenging the Board's decision, which expressly addressed the reason the Board had rejected Marzan's request for a continuance until after the criminal proceedings were completed.

3. *The FEHA Causes of Action Based on Alleged Discriminatory Conduct Unrelated to Marzan's Termination Are Barred by His Failure To Timely Exhaust Administrative Remedies*

a. *Governing law*

"'Under the FEHA, the employee must exhaust the administrative remedy provided by the statute by filing a complaint with [the DFEH] and must obtain from [the DFEH] a notice of right to sue in order to be entitled to file a civil action based on violations of the FEHA. [Citations.] The timely filing of an administrative complaint is a prerequisite to the bringing of a civil action for damages under the FEHA. [Citations.] [¶] As for the applicable limitation period, the FEHA provides that no complaint for any violation of its provisions may be filed with [the DFEH] "after the expiration of one year from the date upon which the alleged *unlawful practice* or refusal to cooperate *occurred*," with an exception for delayed discovery not relevant here. (Gov. Code, § 12960, italics added.)'" (*Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 63, quoting *Romano v. Rockwell Internat., Inc.* (1996) 14 Cal.4th 479, 492; see *Wills v. Superior Court* (2011) 195 Cal.App.4th 143, 153 ["employee must file an administrative complaint with [the] DFEH identifying the conduct alleged to violate FEHA"].)

"In cases appropriate for administrative resolution, the exhaustion requirement serves the important policy interests embodied in the act of resolving disputes and eliminating unlawful employment practices by conciliation [citation], as well as the salutary goals of easing the burden on the court system, maximizing the use of administrative agency expertise and capability to order and monitor corrective measures, and providing a more economical and less formal means of resolving the dispute [citation]." (*Rojo v. Kliger*, *supra*, 52 Cal.3d at p. 83; see *Wills v. Superior Court, supra,* 195 Cal.App.4th at p. 156.) Thus, the administrative complaint must set forth sufficient information to identify the person or employer alleged to have committed the unlawful practice as well as "the particulars" of the unlawful practice. (Gov. Code, § 12960, subd. (b); *Wills*, at pp. 157-158.) If it does not, the exhaustion requirement has not been satisfied. (See *Wills*, at pp. 157-158 [DFEH charge defines scope of lawsuit and must

15

include facts alleging some basis for FEHA claim; otherwise FEHA claim has not been properly exhausted].)

b. *Marzan failed to timely challenge the non-termination-related conduct underlying his FEHA claims in the first amended complaint*

Because the Board's determination there was good cause to terminate Marzan is binding in this lawsuit, to be actionable, Marzan's FEHA claims must be predicated on conduct unrelated to his termination. In addition, those non-termination-related claims must have been timely identified in an administrative complaint filed with the DFEH. They were not.

The basis for the complaint Marzan filed with the DFEH, as well as the intake questionnaire he submitted to the EEOC, was his termination. Both documents identify only his termination as wrongful conduct; neither discussed the failure to promote him, accommodate his disability or other alleged discriminatory treatment. Indeed, the DFEH complaint identified July 8, 2010 as the earliest date on which the discrimination had occurred—that is, the date of the first notice of termination. Nonetheless, Marzan contends he sufficiently identified the District's additional discriminatory conduct in the first and second addenda he sent to the EEOC after he had obtained the right to sue letter from the DFEH.

Documents submitted to the administrative agency describing discriminatory conduct other than the formal complaint may be sufficient to broaden the scope of the complaint and permit the assertion of additional claims in a civil action. (See generally *Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 267 ["'Administrative charges are to be construed liberally because they are often drafted by claimants without the assistance of counsel. Accordingly, "[i]t is sufficient that the EEOC be apprised, in general terms, of the alleged discriminatory parties and the alleged discriminatory acts"'"].) "[W]hat is submitted to the DFEH must not only be construed liberally in favor of plaintiff, it must be construed in light of what might be uncovered by a reasonable investigation." (*Id.* at p. 268.) Whether or not the documents submitted to the EEOC were sufficient to apprise the DFEH of the expanded scope and number of Marzan's

16

claims,[8] however, Marzan's problem is one of timeliness:  The discriminatory acts other than termination alleged as the basis for Marzan's FEHA causes of action occurred more than a year prior to the filing of his complaint with the DFEH on July 29, 2011.

The promotions Marzan contends he formally applied for, but did not receive, were for a customer services manager position in 2008 and a facilities manager position in 2009.  The purportedly discriminatory comments by Lippman were made when he was Marzan's supervisor between 2003 and 2006.  Marzan never complained to the District that its response to his request to accommodate his various disabilities in May 2009 was inadequate or requested further accommodation.  Marzan does not dispute that his complaint to the DFEH was filed more than a year after these events and does not contend there was other, properly identified conduct that can serve as the basis for his FEHA causes of action.  Accordingly, summary judgment as to these claims was properly granted as well.

## DISPOSITION

The judgment is affirmed.  The District is to recover its costs on appeal.


                                                    PERLUSS, P. J.

We concur:


        ZELON, J.                          BECKLOFF, J.[*]

---

8       In *Martin v. Lockheed Missiles & Space Co*. (1994) 29 Cal.App.4th 1718, 1729 pursuant to the "'worksharing agreement'" between the state and federal agencies, the DFEH had advised the former employee the EEOC would be responsible for processing her complaint and informed her she should contact the EEOC directly for resolution of the charge.  The appellate court held, however, if the employee "wished to avail herself of state judicial remedies for her additional claims, it was essential that she undertake by reasonable means to make the additional claims known to [the] DFEH" to satisfy the state exhaustion requirement.  (*Id.* at pp. 1729-1730.)

*       Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.