Filed 4/19/21; Certified for Publication 4/29/21 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| JUNNIE VERCELES, | B303182 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 19STCV09932) |
| v. | |
| LOS ANGELES UNIFIED SCHOOL DISTRICT, | |
| Defendant and Respondent. | |

APPEAL from orders and a judgment of the Superior Court of Los Angeles County, Lia Martin, Judge. Reversed and remanded.

Wyatt Law and Andrew M. Wyatt for Plaintiff and Appellant.

Hurrell Cantrall, Thomas C. Hurrell, Melinda Cantrall; and Anthony J. Bejarano, Assistant General Counsel, Los Angeles Unified School District, for Defendant and Respondent.

Junnie Verceles appeals the order granting the Los Angeles Unified School District's special motion to strike his complaint for discrimination and retaliation in violation of California's Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.). Verceles contends the trial court erred in finding his causes of action arose from protected activity within the meaning of Code of Civil Procedure section 425.16, subdivision (e),[1] and he had failed to establish a probability of prevailing on the merits of his claims. Verceles also appeals the court's award of attorney fees to the District. We reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Verceles's Complaint*

Verceles, who is Filipino and was 46 years old when his complaint was filed in March 2019, had been employed by the District as a teacher since 1998. According to his complaint, on December 1, 2015 he was "removed from his school and placed on reassignment with the local district office . . . due to an allegation of misconduct." Verceles was not told the specifics of the allegation, only that he had been accused of misconduct involving a student.[2] Verceles remained on paid suspension, which he calls "teacher jail," for more than three years, during which time he was told to stay home and report his hours to the District. He

---

[1] Statutory references are to this code unless otherwise stated.

[2] Verceles ultimately learned the accusation was that he had grabbed a student by the shirt, shoved him against a wall, threw the student's backpack at him while shouting, "Get the fuck out," and pushed the student out of the classroom.

2

was not allowed to teach or pursue continuing education or professional development.

In November 2016, while the District's investigation of his alleged misconduct was ongoing, Verceles filed a discrimination complaint with the California Department of Fair Employment and Housing (DFEH). The DFEH case was closed on March 7, 2017.

On March 13, 2018 the District's Board of Education voted to terminate Verceles's employment. Verceles alleges the District's investigation preceding his termination was "neither prompt nor thorough. The investigator interviewed only 8 students out of a class of over 30. Had the investigator done a proper investigation, the truth would have been revealed that one of the students was pressuring others to lie about what happened."

Verceles alleges three causes of action for violation of FEHA: age discrimination, race and national origin discrimination and retaliation. The first cause of action, age discrimination, is based on disparate impact. Verceles alleges the District "has a continuing policy, pattern and practice of age discrimination against credentialed employees over the age of 40 with respect to performance evaluations, pay, promotions, and other terms and conditions of employment. [The District] has implemented these policies and practices despite knowing that they have a longstanding disparate impact on teachers over the age of 40. [The District] also retaliates against teachers over the age of 40 who complain about this discrimination. [¶] . . . [The District's] reliance on the illegitimate 'teacher jail' to remove teachers, and in particular, Plaintiff, from their teaching

assignments and have them sit at home, has an adverse impact on employees over the age of 40 . . . ."

The second cause of action, race and national origin discrimination, is also based on a disparate impact theory. The allegations repeated, almost verbatim, the allegations in the first cause of action, but stated the disparate impact of the District's policies was based on race and national origin.

The third cause of action, retaliation, alleged the District had terminated Verceles's employment as retaliation for his November 2016 complaint to DFEH.

2. *The District's Special Motion To Strike*

On June 4, 2019 the District moved to strike the complaint pursuant to section 425.16. The District argued each cause of action arose from acts in furtherance of its rights of petition and free speech within the meaning of section 425.16, specifically, the investigation into teacher misconduct. The District also argued Verceles could not establish a probability of prevailing on his claims.

In his opposition Verceles argued the wrongful acts upon which his complaint was based were discrimination and retaliation, which are not protected activity. The District's investigation was evidence of that discrimination and retaliation but not the gravamen of the complaint. In support of the merits of his claims, Verceles submitted the declaration of a financial analyst who had reviewed the District's data regarding teachers assigned to "teacher jail." The analyst found "a statistically significant bias against teachers aged 46 and over, when compared against the general teacher population in California" during an unspecified time period. While the graphs and tables attached to the analyst's declaration referred to the race and

4

national origin statistics of teachers in the District and the state, the declaration itself did not contain any conclusions as to those statistics.

After hearing argument on the special motion to strike on June 26, 2019, the court granted the motion, finding Verceles's cause of action arose from "the investigation process which includes plaintiff's removal from the classroom . . . . The acts alleged to constitute the discrimination and retaliation are all part of the proceeding, from the initial investigation to plaintiff's termination." The court also found Verceles had failed to establish a probability of prevailing on his claims. First, the disparate impact claims were not supported by the statistical data provided because "[t]here is no evidence that the age and racial make-up of teachers statewide is reflective of the teachers in [the District]." Therefore, comparison between the two data sets is irrelevant. Second, the court found Verceles failed to state a timeline supporting any inference of a causal connection between his filing of a grievance and the alleged retaliatory act.

On October 14, 2019 the District moved for an award of attorney fees pursuant to section 425.16, subdivision (c)(1), which Verceles opposed. After a hearing on the motion at which neither Verceles nor his counsel appeared, the court granted the motion for fees, awarding the District $44,800, the full amount requested. Judgment was entered against Verceles on November 21, 2019.

Verceles filed a notice of appeal on December 19, 2019

## DISCUSSION

1. *Verceles's Appeal of the Section 425.16 Order Is Properly Before Us*

The District contends Verceles's appeal of the order granting the section 425.16 motion is untimely and, even if timely, the notice of appeal does not adequately identify that order as being appealed.

As the District correctly points out, an order granting a special motion to strike is immediately appealable. (See §§ 425.16, subd. (i), 904.1, subd. (a)(13).) Pursuant to California Rules of Court, rule 8.104(a), Verceles had either 60 days from the date the superior court clerk or the District served him with a notice of entry or the file-stamped copy of the order or 180 days from the entry of the order to appeal the order. (See Cal. Rules of Court, rule 8.104(a).) Verceles's appeal was filed 177 days after entry of the order granting the special motion to strike.

Relying on the 60-day deadline, the District argues Verceles's appeal is untimely and we are without jurisdiction to hear it. However, the District has submitted no evidence a notice of entry or file-stamped order was served on Verceles. Accordingly, Verceles's notice of appeal, filed within 180 days of the entry of the order granting the special motion to strike, is timely.[3]

In the alternative the District argues Verceles's notice of appeal from the judgment does not encompass an appeal of the order granting the special motion. In the section of the notice

---

[3]  We previously denied the District's motion to dismiss the portion of Verceles's appeal that challenges the order granting the special motion to strike.

6

indicating the type of judgment or order appealed from, Verceles's attorney checked the box for "Other" and wrote, "Judgment of dismissal after an order granting a special motion to strike complaint (anti-SLAPP) under Code of Civil Procedure section 425.16; order granting motion for attorney fees under Code of Civil Procedure section 425.16."

"[N]otices of appeal are to be liberally construed so as to protect the right of appeal if it is reasonably clear what appellant was trying to appeal from, and where the respondent could not possibly have been misled or prejudiced." (*Luz v. Lopes* (1960) 55 Cal.2d 54, 59; accord, *K.J. v. Los Angeles Unified School District* (2020) 8 Cal.5th 875, 882; Cal. Rules of Court, rule 8.100(a)(2).) Here, by identifying the order granting the special motion to strike in addition to the order on attorney fees, the notice of appeal made it reasonably clear Verceles intended to appeal both orders simultaneously. Further, there is no evidence the District was misled or prejudiced by the notice of appeal.

> 2. *The Trial Court Erred by Granting the District's Special Motion To Strike*
>
> a. *Section 425.16, the anti-SLAPP statute[4]*

Section 425.16, subdivision (b)(1), provides, "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion

---

[4] SLAPP is an acronym for "strategic lawsuit against public participation." (*City of Montebello v. Vasquez* (2016) 1 Cal.5th 409, 413, fn. 2.)

to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

Pursuant to section 425.16, subdivision (e), an "'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

In ruling on a motion under section 425.16, the trial court engages in a two-step process. "First, the defendant must establish that the challenged claim arises from activity protected by section 425.16. [Citation.] If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384; accord, *Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061 (*Park*).) "Only a cause of action that satisfies both prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning and lacks even minimal merit—is a SLAPP, subject to being stricken under the statute."

(*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89, italics omitted; accord, *Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820.)  If the moving party fails to demonstrate that any of the challenged claims for relief arise from protected activity, the court properly denies the motion to strike without addressing the second step (probability of success).  (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 80-81; *Trilogy at Glen Ivy Maintenance Assn. v Shea Homes, Inc*. (2015) 235 Cal.App.4th 361, 367.)

"A claim arises from protected activity when that activity underlies or forms the basis for the claim."  (*Park, supra,* 2 Cal.5th at pp. 1062-1063.)  Thus, "[t]he defendant's first-step burden is to identify the activity each challenged claim rests on and demonstrate that that activity is protected by the anti-SLAPP statute.  A 'claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted.'"  (*Wilson v. Cable News Network, Inc*. (2019) 7 Cal.5th 871, 884 (*Wilson*); accord, *Park*, at p. 1060.)  "'[T]he mere fact that an action [or claim] was filed after protected activity took place does not mean the action [or claim] arose from that activity for the purposes of the anti-SLAPP statute.'"  (*Park*, at pp. 1062-1063; see *Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 621 ["a claim does not 'arise from' protected activity simply because it was filed after, or because of, protected activity, or when protected activity merely provides evidentiary support or context for the claim"].)  "To determine whether a claim arises from protected activity, courts must 'consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently

form the basis for liability.'" (*Wilson*, at p. 884; accord, *Park*, at p. 1063.)

We review de novo an order granting or denying a special motion to strike under section 425.16 (*Wilson, supra*, 7 Cal.5th at p. 884; *Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 940; *Park, supra*, 2 Cal.5th at p. 1067), considering the parties' pleadings and affidavits describing the facts on which liability or defenses are predicated. (§ 425.16, subd. (b)(2); see *Navellier v. Sletten, supra*, 29 Cal.4th at p. 89; see also *San Diegans for Open Government v. San Diego State University Research Foundation* (2017) 13 Cal.App.5th 76, 94.)

b. *Verceles's complaint does not arise from the District's protected activity*

To prove unlawful discrimination based on disparate impact, Verceles must show "that regardless of motive, a *facially neutral* employer practice or policy, bearing no manifest relationship to job requirements, *in fact* had a disproportionate adverse effect on members of the protected class." (*Guz v. Bechtel National Inc.* (2000) 24 Cal.4th 317, 354, fn. 20; accord, *Jumaane v. City of Los Angeles* (2015) 241 Cal.App.4th 1390, 1404-1405 [disparate impact plaintiff must prove "'that facially neutral employment practices adopted without a deliberately discriminatory motive nevertheless have such significant adverse effects on protected *groups* that they are "in operation . . . functionally equivalent to intentional discrimination"'"].) To prove unlawful retaliation Verceles must show the District subjected him to an adverse employment action for impermissible reasons—namely, because he exercised his right to file a complaint with the DFEH. (See *Wilson, supra,* 7 Cal.5th at p. 885; *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028,

10

1042 ["in order to establish a prima facie case of retaliation under the FEHA, a plaintiff must show (1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action"].) Accordingly, each of Verceles's causes of action depends on an allegation the District subjected him to an adverse employment action for an improper reason. Identifying the particular adverse employment action or actions at issue defines the relevant conduct for purposes of a section 425.16 analysis.

The District urges us to define the alleged adverse action broadly to encompass the entirety of its investigation into Verceles's purported misconduct, arguing, "[A]ll alleged adverse actions here, including the investigation, paid administrative leave and 'teacher jail,' and termination, were inextricably tied to the investigation, which is the adverse employment action complained of by Plaintiff in the Complaint."

The District has not shown Verceles's causes of action "arise from" the District's investigation as a whole. "The 'elements' analysis as articulated by the Supreme Court in *Park*, *supra*, 2 Cal.5th at page 1063, and adopted in *Wilson, supra*, 7 Cal.5th at page 884, does not mean any allegation of protected activity supporting an element of a cause of action subjects that cause of action to a challenge under section 425.16." (*C.W. Howe Partners Inc. v. Mooradian* (2019) 43 Cal.App.5th 688, 700-701.) In *Park* the plaintiff alleged discrimination based on national origin after his application for tenure was denied. The employer argued the cause of action "arose from its decision to deny [Park] tenure and the numerous communications that led up to and followed that decision." (*Park*, at p. 1061.) The Supreme Court

11

rejected the employer's characterization, cautioning it was necessary "to respect the distinction between activities that form the basis for a claim and those that merely lead to the liability-creating activity or provide evidentiary support for the claim." (*Id.* at p. 1064.) Applying that distinction the Court held Park's claim he was denied tenure based on his national origin did not depend on "any statements, or any specific evaluations of him in the tenure process, but only on the denial of tenure itself and whether the motive for that action was impermissible." (*Id.* at p. 1068.) While communications made during the tenure review process or as a result thereof may have supplied evidence of liability, they "[did] not convert the statements themselves into the basis for liability." (*Ibid.*) As the *Wilson* Court reiterated, "A 'claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of." (*Wilson*, at p. 884; see *Park*, at p. 1060.)

As in *Park*, Verceles's discrimination and retaliation claims depend upon the decisions to reassign him and terminate his employment rather than on any communications made during the investigation or the investigation as a whole. Verceles has not alleged the entirety of the investigation was undertaken for discriminatory or retaliatory reasons. In fact, he has conceded the District was obligated to conduct an investigation upon receiving allegations of misconduct. Nor has Verceles alleged he was harmed by the undertaking of the investigation itself. The discrimination claims do not allege the District has a practice and policy of conducting investigations that has a disparate impact on protected groups; instead, it is the specific practice and policy of reassigning teachers to "teacher jail" that is alleged to have an

12

adverse impact.[5]  Likewise, Verceles does not allege the investigation was retaliatory, nor could he given it had already begun at the time he filed his DFEH claim.  Instead, Verceles alleges his termination was the retaliatory adverse action.

Having identified the wrongful conduct at issue, the question is whether that conduct constituted protected activity within the meaning of section 425.16.  The District argues its investigation was an "official proceeding authorized by law" for purposes of section 425.16, subdivision (e)(2), and, therefore, all actions taken during the investigation were protected activity, including the decisions to reassign Verceles and to terminate his employment.  The District is correct that, in general, an investigation into a public employee's conduct is an official proceeding.  (See *Hansen v. Department of Corrections & Rehabilitation* (2008) 171 Cal.App.4th 1537, 1544; *Miller v. City of Los Angeles* (2008) 169 Cal.App.4th 1373, 1383.)  However, contrary to the District's contention, the existence of an official proceeding does not necessarily transform any claim related to that proceeding into an action within the ambit of section 425.16, subdivision (e)(2).  Such an interpretation ignores the plain language of the statute, which requires a claim be based on a

---

[5]     In addition to arguing the wrongful conduct at issue is the District's use of "teacher jail," Verceles argues his complaint arises from the District's failure to promptly and thoroughly investigate the misconduct accusations.  While the complaint does include this allegation, it does not allege the District had a practice or policy of failing to investigate in a timely and thorough manner, nor does it allege any such practice disproportionately affected a protected group.  Accordingly, those allegations cannot form the basis for Verceles's disparate impact claims.

written or oral statement made in connection with the proceeding.

Again, *Park* is illustrative. In *Park* the employer made an argument similar to the one the District makes here—"its tenure decision and the communications that led up to it are intertwined and inseparable." (*Park*, *supra*, 2 Cal.5th at p. 1069.) Thus, the employer argued, even if the decision to deny tenure did not constitute an oral or written statement, it must still be considered protected activity because it was "inextricably intertwined" with the communications that were part of the official proceeding. (*Id.* at p. 1070.) The Supreme Court disagreed and rejected the argument that "every aspect of those [official] proceedings, including the decision to impose discipline, is protected activity for anti-SLAPP purposes." (*Id.* at pp. 1069, 1070 [rejecting "proposition that a suit alleging an entity has made a discriminatory decision necessarily also arises from any statements by individuals that may precede that decision, or from the subsequent communication of the decision that may follow"].) Instead, as discussed, the Court held section 425.16 protected the speech and petitioning activity that led up to or contributed to a government entity's decision but did not necessarily protect "the ultimate decision itself." (*Park,* at p. 1071.)

The District's position finds some support in *Jeffra v. California State Lottery* (2019) 39 Cal.App.5th 471. In *Jeffra* the plaintiff sued his public employer for retaliation after he had been investigated and placed on administrative leave. Unlike the allegations in this case, the *Jeffra* plaintiff argued the investigation had been initiated for an improper purpose— retaliation for his whistleblower complaint. Based on those allegations, our colleagues in Division Eight held the adverse

14

employment action was the investigation itself, which was protected activity within the meaning of section 425.16, subdivision (e)(2). (*Jeffra*, at pp. 482-483.) However, the court did not identify any written or oral statement made in connection with the official proceeding that formed the basis of plaintiff's claim. To the extent *Jeffra* intended to hold the investigation itself was protected activity, its analysis conflicts with that in *Park*; and we decline to follow it. (See *Park, supra,* 2 Cal.5th at pp. 1069-1071; see also *Laker v. Board of Trustees of California State University* (2019) 32 Cal.App.5th 745, 773 [university's investigations of plaintiff were not protected conduct where speech was not the basis of the claim; "[n]or did *Park* suggest that all aspects of internal investigations arise out of protected [speech or] 'petitioning activity' for the purpose of the anti-SLAPP statute"].)

The District's reliance on *Okorie v. Los Angeles Unified School Dist.* (2017) 14 Cal.App.5th 574 is similarly unpersuasive. In *Okorie* the plaintiff, a teacher with the District, alleged causes of action for discrimination, retaliation and harassment based on a variety of conduct, including statements made by the school's principal, a notice sent to the credentialing commission and reassignment to "teacher jail." The court distinguished the case from *Park*, stating Park's complaint was based on the single act of denying him tenure, whereas Okorie's complaint was based "collectively on a handful of decisions . . . *and* a wide array of allegedly injury-causing statements and communicative conduct by Defendants." (*Okorie*, at p. 593.) The court held the statements were protected within the meaning of section 425.16 because they were made in connection with an official investigation. However, far from standing for the proposition

that any claim by "a plaintiff attacking [the District's] internal process for dealing with allegations of abuse" is subject to a special motion to strike under section 425.16, as the District suggests, the *Okorie* court specifically explained the "removal of Okorie from his classroom to his home [and] reassignment of Okorie from his home to ESC, the so-called teacher's jail" were "arguably unprotected decisions."  (*Okorie*, at p. 593.)

In the absence of any oral or written statements from which Verceles's claims arise, the District's decisions to place Verceles on leave and terminate his employment are not protected activity within the meaning of section 425.16, subdivision (e)(2), even if those decisions were made in conjunction with an official investigation.  (See *Park, supra,* 2 Cal.5th at pp. 1069-1071; *Laker v. Board of Trustees of California State University, supra,* 32 Cal.App.5th at p. 773.)

The District alternatively argues the adverse employment actions taken against Verceles were protected activity because they were "conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."  (§ 425.16, subd. (e)(4).)  This argument again manifests a misunderstanding of applicable law.

Purporting to rely on *Wilson*, the District contends, because "a public school district is mandated by law to take all reasonable steps to protect its students," it follows that "investigation of abusive teachers must be considered its pronouncement to the community, i.e. speech, that it has done so."  In *Wilson* the plaintiff was a cable news writer and producer who filed a complaint for FEHA violations after he was fired due to allegations of plagiarism.  The network made two related

16

arguments as to why its termination of plaintiff's employment was protected activity within the meaning of section 425.16: First, its selection of news producers was conduct in furtherance of its free speech rights; second, its decision to terminate a writer for plagiarism was conduct in furtherance of its protected activity of upholding journalistic standards. The Supreme Court rejected the first argument but agreed with the second. The Court recognized a news organization's publication of news concerning matters of public interest "is an exercise of free speech rights secured by the state and federal Constitutions." (*Wilson*, *supra*, 7 Cal.5th at pp. 892-893.) However, the Court continued, "it does not follow that everything the news organization does qualifies as protected activity under the anti-SLAPP statute." (*Id.* at pp. 893-894.)

As to the network's first argument, the Supreme Court stated claims related to a news organization's staffing decisions would not be subject to a special motion to strike unless the staffing decision had a "substantial effect on the news organization's ability to speak on public issues." (*Wilson, supra,* 7 Cal.5th at p. 896.) Because the network had failed to show Wilson had sufficient editorial control to affect its ability to speak on public issues, the Court held his termination was not protected activity. (*Id.* at pp. 896-897.) As to the network's second argument, the Court stated a news organization's exercise of free speech included the right to "maintain and enforce standards of journalistic ethics." (*Id.* at p. 897.) Finding the network had made a prima facie case its termination of Wilson's employment was based on plagiarism, the Supreme Court found the decision qualified as conduct in furtherance of its exercise of free speech in connection with a public matter. (*Id.* at p. 898.)

17

Nothing in the *Wilson* Court's analysis supports the District's position here. Even if the District adequately demonstrated its staffing decisions concern a matter of public interest, it has not identified any recognized constitutionally protected right of free expression that a school district has in its teacher assignment and hiring decisions.[6] Indeed, in *Park* the

---

[6] The District, citing *Texas v. Johnson* (1989) 491 U.S. 397, one of the United States Supreme Court's flag-burning decisions, also suggests its decision to place Verceles on administrative leave while investigating the charge of physical abuse was itself expressive conduct, communicating the message the District would safeguard its students, and thus protected First Amendment activity within the meaning of section 425.16, subdivision (e)(4). (See *Wilson, supra*, 7 Cal.5th at p. 893 ["[a]t a minimum, [subdivision (e)(4)] shields expressive conduct—the burning of flags, the wearing of armbands, and the like—that, although not a 'written or oral statement or writing' (§ 425.16, subd. (e)(1)-(3)), may similarly communicate views regarding 'matters of public significance'"].) Conduct, however, is protected by the First Amendment only if it "is inherently expressive." (*Rumsfeld v. Forum for Academic & Institutional Rights, Inc.* (2006) 547 U.S. 47, 65-66; see *United States v. O'Brien* (1968) 391 U.S. 367, 376] ["[w]e cannot accept the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea"].) That is, particular conduct is constitutionally protected as speech only if "'[a]n intent to convey a particularized message was present'" and "'the likelihood was great that the message would be understood by those who viewed it.'" (*Texas v. Johnson, supra*, at p. 404; accord, *Spence v. Washington* (1974) 418 U.S. 405, 410-411.) The District's use of "teacher jail" while investigating the allegations of Verceles's misconduct falls far short of satisfying that exacting standard. (See *Baral v. Schnitt, supra*, 1 Cal.5th at p. 384 [it is the moving party's burden to

18

Supreme Court rejected an argument similar to the one the District makes here, noting the defendant had failed "to explain how the choice of faculty involved conduct in furtherance of *University speech* on an identifiable matter of public interest. . . . Whether the grant or denial of tenure to this faculty member is, or is not, itself a matter of public interest has no bearing on the relevant questions—whether the tenure decision furthers particular University speech, and whether that speech is on a matter of public interest—and cannot alone establish the tenure decision is protected activity under section 425.16, subdivision (e)(4)." (*Park, supra,* 2 Cal.5th at p. 1072.)

The District alternatively contends its investigations into alleged teacher misconduct, including its use of "teacher jail" as a form of administrative leave, constitute conduct in furtherance of protected petitioning or speech activity within the meaning of section 425.16, subdivision (e)(4). The District reasons that, because Verceles, as a certificated employee, had a right under Education Code section 44944 to petition the Commission on Professional Competence (CPC) to review the District's decision to terminate his employment at a contested hearing, its prelitigation investigation, like pretrial civil discovery, was protected activity under section 425.16, subdivision (e)(4), as

---

establish the challenged claim arising from activity protected by section 425.16]; see also *Clark v. Community for Creative Non-Violence* (1984) 468 U.S. 288, 293, fn. 5 ["it is the obligation of the person desiring to engage in assertedly expressive conduct to demonstrate that the First Amendment even applies"].)

conduct incidental to the right to petition.[7]  This analysis is fatally flawed.

CPC review is the final administrative step in the process of terminating a permanent school employee.  The argument the District has crafted to support its special motion to strike notwithstanding, presumably its investigation of Verceles's alleged assault of one of his students was undertaken to determine whether the District's board should dismiss him, not

_____

[7]      Education Code section 44934, subdivision (b), provides, "Upon the filing of written charges, duly signed and verified by the person filing them, with the governing board of the school district, or upon a written statement of charges formulated by the governing board of the school district, charging that there exists cause, as specified in Section 44932 or 44933, for the dismissal or suspension of a permanent employee of the school district, the governing board of the school district may, upon majority vote, . . . give notice to the permanent employee of its intention to dismiss or suspend him or her at the expiration of 30 days from the date of service of the notice, unless the employee demands a hearing as provided in this article."

"Hearings to determine whether permanent public school teachers should be dismissed or suspended are held before the Commission on Professional Competence (Commission)—a three-member administrative tribunal consisting of one credentialed teacher chosen by the school board, a second credentialed teacher chosen by the teacher facing dismissal or suspension, and 'an administrative law judge of the Office of Administrative Hearings who shall be chairperson and a voting member of the commission and shall be responsible for assuring that the legal rights of the parties are protected at the hearing.' [Citation.]  The Commission's decision is deemed to be the final decision of the district's governing board." (*California Teachers Assn. v. State of California* (1999) 20 Cal.4th 327, 331-332; see Ed. Code, § 44944.)

simply to defend that decision before the CPC if a hearing were requested. (See *Tichinin v. City of Morgan Hill* (2009) 177 Cal.App.4th 1049, 1069, 1065 ["it as proper and appropriate to protect prelitigation investigation as it is to protect prelitigation letters that demand settlement or threaten legal action discovery, and postlitigation settlement talks," but conduct that constitutes "a separate and distinct activity" from litigation is not protected]; accord, *People ex rel. Harris v. Aguayo* (2017) 11 Cal.App.5th 1150, 1163.) Moreover, it is the teacher's option whether to seek CPC review of a school district's decision to terminate his or her employment. (Ed. Code, § 44944, subd. (b)(1)(A).) The District's participation in, or preparation for, the statutorily defined procedures for dismissal or suspension, without more, does not constitute conduct in furtherance of the District's own right to petition. (See *San Ramon Valley Fire Protection Dist. v. Contra Costa County Employees' Retirement Assn.* (2004) 125 Cal.App.4th 343, 354 ["[a]cts of governance mandated by law, without more, are not exercises of free speech or petition"].) In this factual and legal context, the District's contention its investigation of Verceles and its decision to place him on administrative leave in "teacher's jail" was conduct in furtherance of its own right to petition borders the frivolous.[8]

---

[8]     Because we find the District failed to make the threshold showing the complaint arose from protected activity, we need not address the trial court's finding Verceles had not established a probability of prevailing on the merits.

21

## DISPOSITION

The judgment of dismissal and the orders granting the District's special motion to strike and awarding it attorney fees are reversed.  The cause is remanded with directions to the trial court to enter a new order denying the special motion to strike. Verceles is to recover his costs on appeal.

PERLUSS, P. J.

We concur:

SEGAL, J.

FEUER, J.

Filed 4/29/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| JUNNIE VERCELES, | B303182 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 19STCV09932) |
| v. | |
| LOS ANGELES UNIFIED SCHOOL DISTRICT, | ORDER CERTIFYING OPINION FOR PUBLICATION (NO CHANGE IN APPELLATE JUDGMENT) |
| Defendant and Respondent. | |

THE COURT:

The opinion in this case filed April 19, 2021 was not certified for publication.  It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the appellant's request pursuant to California Rules of Court, rule 8.1120(a) for publication is granted.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

_____

PERLUSS, P. J.          SEGAL, J.          FEUER, J.